Matthias, J.
The foregoing brief statement of the pleadings sufficiently shows the issues to be determined in this case. The American Insurance Union was organized in 1894 under the provisions of Section 3630, Revised Statutes, now Section 9427, General Code. That and subsequent sections authorized the organization of mutual protective associations,
*190 In 1904 this association, pursuant to an act passed by the legislature of the state, being Section 9462 et seq., General Code, conformed its organization and plan of operation to such act of the legislature regulating fraternal beneficiary societies, orders and associations.
The decedent, Lincoln Fritter, had taken out the certificate of insurance here in question in 1894, such certificate being made payable to his estate. At the time of the reorganization of this association into a fraternal benefit society and for some time theretofore the decedent, Lincoln Fritter, was general counsel of the association, and as such was not only active in its management but particularly in bringing about and perfecting such changes. In his report as general counsel, which was approved and followed by the association, Fritter stated: “At the last session of the Ohio legislature a new act regulating fraternal beneficiary associations and repealing former acts of the general assembly of the state of Ohio, was passed and as a consequence various matters have had to be taken up by the officers of the American Insurance Union with the Ohio insurance department, with a view to bringing our business and our certificates of membership and other affairs into harmony with the rulings of the insurance department and the new laws affecting us as a fraternal beneficiary association.”
Under Section 9467, General Code, being a portion of the fraternal benefit society act referred to by Fritter in his report, the payment of death benefits was limited to the “family, heirs, relatives *191 by blood, marriage or legal adoption, affianced husband or affianced wife, or to a person or persons dependent on the member.”
Such association, apparently in response to the report and recommendation of Fritter as its general' counsel, which it had approved, adopted a new constitution and by-laws, and thereafter the business of such association was conducted in the manner prescribed by the new legislation and the constitution and by-laws adopted in conformance thereto, a portion thereof being as follows:
“This corporation is formed for the purpose of establishing and maintaining a secret society and benevolent order, to be a fraternal beneficiary association, organized and carried on solely for the mutual benefit of its members and their beneficiaries, and not for profit,” and to have the lodge system and ritualistic form of work and representative form of government; and therein and thereby—
“To assist the widows, orphans and dependents of its deceased members.
“To establish and maintain a benefit fund for the payment of stipulated sums of money and benefits to the family, heirs, relatives by blood, marriage or legal adoption, affianced husband or affianced wife of, or to a person or persons dependent on, the member, as the member may direct, in such manner as may be provided hereinafter.
“The money or other benefit, charity, relief or aid to be paid, provided or rendered by this association shall not be liable to attachment by trustee, garnishee, or other process, and shall not be taken, *192 appropriated or applied by any legal or equitable process, or by operation of law, to pay any debt or liability of a certificate-holder or of any beneficiary named in the certificate, or any person who may have rights thereunder.”
Under the mutual protective association act, being Section 9427 et seq., General Code, the estate, executors or administrators of the certificate-holder could be named as beneficiary, as was done in the certificate of Lincoln Fritter here in question. Subsequent to the reorganization the limitation as to the beneficiary made by Section 9467 was observed and followed by the association.
The first question we have for determination is whether the reorganization of this association, in the manner heretofore described, affects certificates of insurance theretofore issued to members in respect to the beneficiary. In other words, whether the act of the association in conforming its plan of operation to the fraternal beneficiary statute effects a change of beneficiary in certificates theretofore issued by the association.
The authorities cited by counsel are somewhat in conflict upon this proposition. "Numerous decisions are cited as the result of the industry and research of counsel, an analysis or classification of which would extend this opinion beyond reasonable bounds. It is deemed sufficient to say that we regard the weight of authority to be to the effect that such change, as we have heretofore indicated, made in the organization and plan of operation by the enactment of statute and the amendment of constitution and by-laws to comply *193 therewith, would not of itself operate to change the beneficiary of a policy or certificate theretofore issued. In this case, as in others, however, may be seen the futility of attempting to fit decisions in other cases to the facts disclosed by' the record in the case before us.
It is quite apparent that Fritter himself had regarded the existing policies' or certificates of insurance affected by the act of the association in reorganizing under the fraternal beneficiary law, and that he not only desired to leave a heritage that would go directly to the beneficiary without the intervention of an executor, but considered that his own certificate was so affected by the change of statute and constitution and by-laws as to have the result so much desired and so earnestly sought. So also, the association, or those then in control or management thereof, regarded the existing policies. Fritter, as shown by the record, was active in directing the management of the company and also in promoting and bringing about its reorganization and transforming its character from that of a mutual protective association, under the old statute, to a fraternal benefit association, under the new plan of operation. No definite or precise form is required to be followed by the holder of such certificate of insurance to effect a change of beneficiary. It is sufficient if he clearly manifest an intention to make such change, and the executive officers then in charge of the association regard such change of beneficiary so consummated. That being done, no matter what its manner or form, *194 the proceeds of such certificate, upon the death of the assured, should be paid to the newly designated beneficiary. Here we find that Fritter chose to treat his certificate as controlled by the new statute and the new constitution and by-laws enacted to conform thereto, and that the association, or those in active charge and management thereof at that time, adopted the same view, and both parties considered that such change was made by a merger of all existing policies into the reorganized fraternal association. It is apparent, therefore, that the parties to this transaction tacitly agreed that the policies or certificates should be controlled by the fraternal beneficiary act and the new constitution and by-laws.
This conclusion is not in anywise out of harmony with the rule we have heretofore stated, that amendments of laws regulating such associations, and changes of constitution and by-laws, are to be construed as operating prospectively and not retroactively. It cannot be claimed, however, that a beneficiary (here the estate) named in such a policy or certificate of such association, has any vested interest therein until the death of the insured, and, hence, in the absence of prohibitory legislation, the beneficiary may be changed at will by the insured, upon a manifestation of his intention and designation of a new beneficiary. A clear manifestation by a holder of such certificate of a desire of such change of beneficiary, and a belief that it has been effected, no matter in what manner or form, coupled with the concurrence therein by *195 the management of the association, accomplished the purpose of making the change as clearly and certainly as it could otherwise be done. It being true that no one else had a vested interest in this certificate, why should any one else be permitted to complain of the manner in which it was made? The courts may properly give a contract such construction as did the parties themselves. 9 Cyc., 588.
. Lincoln Fritter was active and influential in the management of the affairs of The American Insurance Union until 1907. At that time he disappeared and the dues upon his certificate of insurance were paid the association by his brothers and sisters. There is an entire absence of conflict between the next of kin, the brothers and sisters having waived all right to any claim whatever in favor of the mother of Lincoln Fritter, whom the evidence shows had been somewhat dependent upon him' for support. These facts entitle her to recover in this action. It must follow that Lentz, executor, not having been entitled to receive the proceeds of this certificate on behalf of the estate, is to be regarded as a trustee of this fund for and on behalf of the rightful beneficiary.
It is contended by The American Insurance Union that the plaintiff cannot maintain this action against that association because she did not pursue the remedy prescribed by the constitution and bylaws of the order. In view of the admission made by the pleading of the association, that proofs of death were properly made and satisfactorily presented and filed, and the fact that it did make *196 payment of the proceeds of such certificate to Lentz, executor, almost immediately, its defense of failure to appeal is unavailable. Lentz, who is executor, was also president of the A. I. U. On January 16, 1909, the decision was made by the national executive board of the A. I. U., allowing the amount of the policy and awarding it to Lentz, executor, and a week later it was paid. Until after that time the next of kin had no notice of the decision of January 16, and consequently no opportunity to appeal. Such appeal would then have been in vain. There was evidence that Mr. Lentz, as president of the company, had waived formal filing of the claim by Mrs. Fritter and the limitation of one year for bringing the action, and upon these issues of fact the court below found in favor of the plaintiff, and we make no further inquiry into them. The only question as to Lentz, executor, is whether his holding should be treated as for the estate of Lincoln Fritter or this plaintiff. Having concluded that the plaintiff is the rightful beneficiary and entitled to the proceeds, the judgment in that regard should be affirmed. Under the circumstances presented by the record in this case the suggestion seems pertinent that the A. I. U. might very properly have filed an interpleader and thus been discharged from further liability. Both defendants are liable for the proceeds of the policy and interest thereon. Western & Atl. Pipe Lines v. Home Ins. Co., 145 Pa. St., 346, 22 Atl. Rep., 665; Davis et al. v. National Life Ins. Co., 188 Mass., 299, 74 N. E. Rep., 330.
The judgment of the court of appeals, we con- *197 elude, is in all respects right and is, therefore, affirmed.

Judgment affirmed.

Johnson, Wanamaker, Newman and Jones, JJ., concur.