STANDARD LEATHER COMPANY, Appellant, v. MERCANTILE TOWN MUTUAL INSURANCE COMPANY, Respondent.

St. Louis Court of Appeals, May 26, 1908.

1. **CONFLICT OF LAWS: Insurance Contract: Presumptions of Common Law Rule.** In an action on a Pennsylvania insurance policy where the law of Pennsylvania relating to the construction of such policy was not shown, its construction should be determined according to the rules of common law and there being no proof to the contrary, the rule of common law must be presumed to be the same in Pennsylvania as in Missouri.

2. **INSURANCE: Conditions of Policy: "Unconditional and Sole Ownership:" Mortgages.** Where a policy of fire insurance contained a clause providing that it should be void if the interest of the insured in the property covered was other than

unconditional and sole ownership, this condition was not violated by the existence of a mortgage outstanding on the property; the proviso did not refer to encumbrances, but to the character and quality of the title, mortgages and encumbrances not being mentioned in the policy.

3. ——: Concurrent Insurance.   Where a policy of fire insurance required the insured to take out concurrent insurance for a given amount, and a concurrent policy described the property in a manner different from the description in the first policy, but with sufficient accuracy to show it was the same property, so that in case of loss there could be apportionment of damages between the companies writing the two policies, the condition was complied with.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. E. Withrow,* Judge.

REVERSED AND REMANDED.

*Bland & Cave* for appellant.

(1)   A stipulation in a policy that it shall be void if the insured is not the sole and unconditional owner of the property does not refer to encumbrances upon the property, but to the character and quality of the title.   It is well settled that this provision is not violated by the existence of liens or encumbrances.   Kerr on Insurance, sec. 151; Boulware v. Insurance Co., 72 Mo. App. 639; Bushnell v. Insurance Co., 110 Mo. App. 223; Pres. etc. v. Insurance Co., 1 Pitts. (Miss.), 41 So. 5; 1 May on Insurance, sec. 287; Ostrander on Insurance, secs. 71, 72; 19 Cyc. of L. & P., 694-95; 11 Cooley on Insurance, p. 1373, citing the following cases in point: Insurance Co. v. Meschendorf, 14 Ky. Law Rep. 757; McClelland v. Insurance Co., 107 La. 124; Insurance Co. v. Beck, 43 Md. 358, Insurance Co. v. Fuller, 53 Neb. 811; Slobodisky v. Insurance Co., 53 Neb. 816; Stamping Co. v. Insurance Co., 24 N. Y. Supp. 646; Chandler v. Insurance Co., 88 Pa. 223; Insurance Co. v. Dunham, 117 Pa. 460; Collins v. Insurance Co., 165 Pa. 298; Steinmeyer v. Steinmeyer, 64 S.

C. 413; Insurance Co. v. Crockett, 7 Lea (Tenn.) 725; Insurance Co. v. Lancaster, 7 Tex. Cir. App. 677; Insurance Co. v. Brooks (Tex.), 32 S. W. 714; Insurance Co. v. Swann (Tex.), 41 S. W. 519; Insurance Co. v. Nalls (Va.), 44 S. E. 896; Insurance Co. v. Weill, 28 Grat. (Va.) 389; Insurance Co. v. Rodefer, 92 Va. 747, 53 Am. St. Rep. 846 and notes; Carrigan v. Insurance Co., 53 Vt. 418; Wolpert v. Assur. Co., 44 W. Va. 734; Vankirk v. Insurance Co., 79 Wis. 627; Gettelman v. Insurance Co., 97 Wis. 237. (2) Where, by the terms of the policy (as here) no disclosure is required of the assured as to the extent of their interest, and no inquiry is made in regard thereto, they may properly describe the property as "theirs," although subject to a mortgage, in spite of a provision of the policy making it void if the interest of the insured be not truly stated herein. Mers v. Insurance Co., 68 Mo. 127. (3) The burden is on the defendant to show that there was not at all times a policy in the Liverpool & London & Globe Insurance Co. in form concurrent with the policy sued on and on the identical property covered by it in order to defeat a recovery on that ground. 19 Cyc. of L. and P., 936; Allen v. Insurance Co. (Idaho), 88 Pac. 245; Cooley on Insurance, pp. 1181-2 and cases cited; Russell v. Insurance Co., 84 Iowa 93; Boulware v. Insurance Co., 112 Ala. 422; Sullivan v. Insurance Co. (Tex.), 34 S. W. 999; Insurance Co. v. Farmsworth, 72 Miss. 555; Blasingame v. Insurance Co., 75 Cal. 633; Insurance Co. v. Reynolds, 32 Gratt. 613; Campbell v. Insurance Co., 98 Mass. 381; Insurance Co. v. Ewing, 92 U. S. 377; Roach v. Insurance Co., 28 S. C. 431; 7 Ency. of Evidence, 516 and cases cited.

STATEMENT.—The property insured is described in the policy in suit as follows:

"Standard Leather Company of Pittsburg, Pa. $500.

"On the following described property, occupied by the assured as a Patent Leather Factory and Finishing

house situate on the line of West Penn. Railroad, near Cheswick, Allegheny county, Pa.

"On all of their buildings, whether built in whole or in part of brick or wood, gravel or iron roofs, including all additions, foundations, pavements, furnaces, ovens and their contents, flues, stacks, machinery, machines and parts of same, dynamos, switch-board and connections, engines, boilers, tanks, leather-working machinery, shafting, belting pulleys, hangers, vats, tables, elevators and connections, tools, hose, watchman's clock and all other machinery appertaining to or used in the manufacture of patent leather and on stock manufactured, unmanfactured or in process, including packages full and empty, and all other material and supplies their own or held by them in trust or sold, but not removed, and office furniture and fixtures, books, stationery and office supplies, all while contained in and on premises above described.

"Other insurance permitted.

"Privilege granted to make alterations, additions and repairs, and to work at all hours.

"Permission to use natural gas for fuel and light and to generate and use electricity for light and power in the above mentioned premises, when the entire equipments are in full compliance with the standard of Board of Fire Underwriters of Allegheny county, Pa.

"This insurance does not cover and shall not be liable for loss to accounts, bills, currency, deeds, evidence of debt, money, notes or securities."

In the Liverpool, London & Globe Insurance Company's policy, referred to in the policy in suit, the description is as follows:

"On all their brick, frame or other buildings and sheds, and all additions, extensions and attachments thereto, and permanent fittings and fixtures of all kinds therein or thereon, including engines, boilers, stacks and connections, machines and machinery, and parts and

extra parts thereof, shafting, belting, pulleys, hangers, gearing, millwright work, electric light plant and equipment complete, tools, implements, apparatus, appliances, utensils, furniture and fixtures, catalogues and all other printed matter, stationery and office supplies, and all other equipment and furnishment of every kind, used for use in the operation, maintenance and protection of their property; together with all stock of every nature, manufactured, unmanfactured, or in process, and all materials, supplies and packages for the production thereof, the property of the assured, or held in trust, or sold but not delivered or removed, all while contained in any or all of the above described buildings and sheds, and additions, extensions or attachments thereto, or on premises owned or leased by the assured, situate at or near Cheswick Station, on the line of the Western Pennsylvania Railroad, Allegheny county, Pa., and occupied solely by the assued for the manufacture of leather and other purposes, incidental to their line of business, and agreeable to a plan on file in the office of Negley & Clark Company, Insurance, Pittsburg, Pa.

### General Privileges.

"Privileged to make additions, alterations, improvements and repairs, and this insurance to cover thereon and therein, to work at all hours, to use natural gas for fuel and light, and necessary oils for lighting, lubricating and other purposes, and generally to do such work and to use such materials and supplies as may be necessary in the conduct of their business; and for other insurance without notice until required.

"This insurance does not cover loss to accounts, bills, evidence of debt, deeds, money, notes or securities.

### Electric Light and Dynamo Clause.

"Privileged to generate and use electric lights when the entire equipment is in full compliance with the

131 App.—45

Standard of the Board of Fire Underwriters of Allegheny county, Pa., and a certificate obtained from said board to that effect. It being understood that no alterations shall be made in the equipment after the certificate is issued without consent from said board."

GOODE, J. (after stating the facts).—Plaintiff is a corporation organized under the laws of the State of Pennsylvania, and defendant is a town mutual insurance company organized under the laws of the State of Missouri. As such it is exempt from the general insurance laws of the State. [R. S. 1899, sec. 8024.] Defendant issued a policy of insurance to plaintiff on certain property belonging to the latter, situate on the line of the West Pennsylvania Railroad Company at Cheswick, Allegheny county, Pennsylvania. The policy ran from July 30, 1903, to July 30, 1904. It covered what appears to have been a factory belonging to plaintiff at the place mentioned, including all the buildings of the factory, the machinery, tools, stock, and other property which will be more particularly mentioned in considering one of the defenses. The property insured was consumed by fire on July 12, 1904, while the policy was in force, the destruction being total. As the indemnity provided in the policy was not paid, this action was instituted to recover the sum, to-wit, $500. The property appears to have been of great value and was insured, the evidence tends to show, for upwards of eighty thousand dollars. Several defenses were interposed based on supposed breaches of warranties contained in the policy, but only two have been insisted on in the briefs for defendant and they only will be noticed. The policy contained a clause providing it should be void if the interest of the insured in the property covered was other than unconditional and sole ownership. At the date of the policy there was an outstanding mortgage on the real property originally given to secure a note of $7,000, for part of the purchase price of the realty, on

which note there was an unpaid balance of $3,500. It is contended the existence of this mortgage was a breach of the clause recited and rendered the policy void. No inquiries by the company or representations by plaintiff about the title were shown to have been made when the insurance was applied for, nor are mortgages or incumbrances mentioned in the policy. Another stipulation was that the entire policy should be null and void if there was not at the time it was issued, or if afterwards there should cease to be, other fire insurance in the Liverpool, London & Globe Insurance Company of Liverpool for an amount not less than three times the amount of defendant's policy in form concurrent with said policy and on the identical property covered by it. Defendant pleads a breach of this condition in avoidance of the policy. The evidence tended to show plaintiff held insurance in the Liverpool, London & Globe Company for $2,000 at the date of the policy in suit and until the fire occurred. But defendant insists the policy of the Liverpool, London & Globe Company did not cover the identical property covered by the one in suit and, therefore, the condition was broken. After the evidence had been received, the court at defendant's instance, granted a declaration of law against recovery and plaintiff appealed.

The property insured was in Pennsylvania, the domicile of the plaintiff company and the contract was a Pennsylvania one. [Thompson v. Insurance Co., 169 Mo. 12, 68 S. W. 889.] What the law of Pennsylvania is regarding the effect of an outstanding mortgage on a covenant in an insurance policy that the contract shall be void if the interest of the insured is other than unconditional ownership, was not proved. Hence the point is to be determined according to the rules of the common law and equity, and these rules, there being no proof to the contrary, must be presumed to be the same in Pennsylvania as in Missouri. [Johnston v. Gawtry, 11 Mo.

App. 322, 83 Mo. 339; Goldsmith v. Ins. Co., 12 Mo. 479, 483; Wilson v. Cockrill, 8 Mo. 1.] For support of the proposition that the outstanding mortgage voided the policy in suit, defendant's counsel rely mainly on the decision of this court in Hubbard v. Ins. Co., 57 Mo. App. 1. But the point was not directly involved in said case, wherein the insured had in her application for insurance, represented she held a fee simple title to the property covered; whereas she only held a contract for its purchase and a portion of the purchase money remained unpaid. She had no deed to the lots on which the insured house stood, but held a bond for a deed. This court decided her interest was other than unconditional and sole ownership; resting the conclusion on the fact that a portion of the purchase money was unpaid. The opinion said the representation or warranty in the policy that she was the sole and unconditional owner, implied she had paid all the purchase money and there was no other incumbrance on the property. The mortgage in the case before us was given for an unpaid balance of the purchase price of the land on which the buildings stood; but a distinction may be drawn between the title of a vendee who has received a deed to the premises and given back a mortgage for part of the price, and the title of a vendee who simply holds a bond binding the vendor to make a deed when the full amount of the purchase money is paid. Under our decisions a mortgage, until entry by the mortgagee for condition broken, is looked on as a lien or security for the debt, substantial ownership remaining in the mortgagor. See Kennett v. Plummer, 28 Mo. 145, where it is said: "The modern doctrine is well established that a mortgage is but a security for the payment of the debt or the discharge of the engagement for which it was originally given, and until the mortgagee enters for breach of the condition, and in many respects until final foreclosure of the mortgage, the mortgagor continues the owner of

the estate, and has a right to lease, sell, and in every respect to deal with the mortgaged premises as owner, so long as he is permitted to remain in possession." It is true the legal title is outstanding in the mortgagee and he may enter after default; but the equitable estate is vested in the mortgagor until foreclosure. In a strictly technical sense the mortgagor is not sole and unconditional owner; but he seems to be in the sense intended by such a term in a policy of insurance, according to the decision of our Supreme Court and of nearly all courts of last resort. That the complete equitable interest, even though it is subject to a defeasance, constitutes absolute ownership within the sense of a clause in an insurance policy rendering the contract void if the interest of the insured is not absolute, was decided in Gaylord v. Insurance Co., 40 Mo. 13. But where the vendee merely holds a contract binding the vendor to execute a deed on payment of the purchase money, as long as the purchase money remains unpaid, it cannot be said the vendee owns either the legal or the equitable estate. He simply has the right in equity to specific performance of his contract on tendering the purchase money. Hence we do not consider the Hubbard case a controlling authority. In Holloway v. Insurance Co., 48 Mo. App. 1, the insured in his application was asked, among other questions the answers to which were made warranties, if the property, a dwelling house, was incumbered, and if so, for how much and when the mortgage fell due. He answered it was incumbered for $556, payable at his option. In truth the mortgage was an absolute obligation and overdue; but the plaintiff's sister held the mortgage and he had an agreement with her, not for payment at his option, but that she would not push him in his lifetime if he paid the interest. The answer of the applicant seems to have been held a breach of a clause of the policy requiring the property to be owned by the in-

sured in fee simple.    Another mortgage on the property was not disclosed in the application, and the evidence showed the plaintiff held only an equitable claim to the land covered by this mortgage and did not acquire the legal title until after the destruction of the house. Besides, the policy contained a condition against other insurance and there was other insurance to the amount of $800. . For all those breaches it was held the plaintiff could not recover.    The ruling that the mortgage violated the clause requiring the title of the insured to be a fee simple, is opposed to the current of authority and to plain law.    However, that condition was different from the one before us.    In Bushnell v. Insurance Co., 110 Mo. App. 223, 85 S. W. 103, the provision of the policy under examination was, that any transfer or change of title to the property without the assent of the company, should render the insurance void, and the question was whether a mortgage incumbrance to secure the payment of money was a transfer or change of title within the meaning of this clause.    The court held the mortgage was a mere security for a debt and its execution did not involve a substantial change of ownership in the land but only created an incumbrance or lien on it.    Said authority would support this plaintiff's position by analogy; but at the conclusion of the opinion it is said a stipulation in a policy that the title of the owner is sole and unconditional, has been construed to cover a mortgage or deed of trust; citing Grigsby v. Insurance Co., 40 Mo. App. 276; Barnard v. Insurance Co., 27 Mo. App. 26; Hubbard v. Insurance Co., 57 Mo. App. 1; Harness v. Insurance Co., 62 Mo. App. 245.    We have already examined the Hubbard case and the others cited do not decide what the opinion said they did. . In the Barnard case the clause regarding ownership had been violated by the insured selling the property to another person and putting him in possession.    This sale had occurred before the policy was

taken out. In the Grigsby case it appeared the insured property was not owned solely by Grigsby, to whom the policy was issued, but partly by one Fry; wherefore it was held Grigsby's interest was not absolute. In the Harness case it was decided, following the Hubbard case, that a person in possession of real estate holding a bond for a deed to be executed on payment of the purchase money, the purchase money being yet unpaid, is not the sole, entire and unconditional owner of the property. To the same effect is Cole v. Insurance Co., 103 S. W. 569, 126 Mo. App. 134. These are the cases relied on in support of the theory that the existence of the mortgage on plaintiff's buildings at the time its policy was written, constituted a breach of the covenant that its interest was not other than sole and unconditional ownership. None of them decided the point unless it is the Holloway case; and if it did we are unwilling to follow the ruling. A careful search among the authorities has revealed very little support for the doctrine, and we think it is inconsistent with higher decisions in this State and with those of most outside jurisdictions. In Gaylord et al. v. Insurance Co., 40 Mo. 13, it appeared the insured property had been sold under a decree foreclosing a mortgage and a certificate of title issued to the purchaser, who assigned it to the plaintiffs under the laws of Illinois, which allowed fifteen months for redemption before a deed could be executed. While the title was in this condition, the insurance was effected and prior to the execution of the deed the property burned. The policy contained a clause that if the interest of the insured was a leasehold, mortgage, reversionary interest or interest not absolute, it must be so represented to the company and expressed in writing; otherwise the insurance would be void. The court considered what was meant by the expression "absolute interest" and held it referred to actual ownership rather than the nature of the title, and meant a vested inter-

est of which the owner could not be deprived without his consent, in contradistinction to a contingent and conditional interest. The court said further that an equitable title which would be protected by a court of equity, might be an ownership as absolute as the legal title, and though the plaintiffs' title was subject to be divested by redemption, *and was so far conditional or defeasible* (we emphasize) it did not come within the clear intent of the clause of the policy, which referred to lesser estates of the class enumerated. The court made this further pregnant observation: that it saw no reason for a different construction; for if the title of the plaintiffs was not redeemed *the loss would fall on the plaintiffs and they would be justly entitled to indemnity;* saying further that indefeasibility of title was not the criterion of an insurable interest. In Boulware v. Insurance Co., 77 Mo. App. 637, a part of the contract was that "if all the interest in the property to be insured, be a leasehold, or other interest not absolute, it must be so stated in the application, otherwise the policy would be void and will not attach." There was an outstanding mortgage which had been given for a balance of the purchase price, and no reference was made to this mortgage. The court said the question was whether plaintiff's interest came within the meaning of the language "a leasehold or other interest not absolute." The court determined the existence of the mortgage did not prevent the interest of the insured from being absolute. The effect of this decision and the Gaylord one, is that interests or titles are none the less absolute because there is a mortgage on the property, or an outstanding equity to redeem, either of which may result in defeating the title. By parity of argument a title can as well be sole and unconditional when subject to those contingencies. One of the cases cited with approval in the Boulware case was Ellis v. Insurance Co., 32 Fed. 646, wherein the policy was to be

void if the interest of the applicant in the property did not amount to entire, sole and absolute ownership unless his interest was truly represented in the policy. The property was under mortgage; but it was held the proviso in regard to entire, sole and absolute owner- ship did not refer to incumbrances, but to the character and quality of the title and whether it was a fee simple, leasehold or otherwise. 1 Biddle, Insurance, sec. 685, is also cited with approval by the court in the Boulware case. Said work, in discussing stipulations like the one in hand, reads: "Where such provisos contain no special reference to incumbrances, or to an incumbered title *eo nomine,* the conditions of such provisos may be fulfilled by evidence of a title in fee, though incumbered by mortgages or liens." In 2 Cooley, Briefs on Insurance, 1356, it is said a statement as to title, or a condition calling for a disclosure if the title is not absolute, does not render necessary a disclosure of incumbrances, and many cases are cited in support of the rule. In the same volume (p. 1378) the text says: "It is a well-settled rule that a sole and unconditional ownership clause is not violated by the existence of liens and incumbrances." And, again: "As the owner of property subject to incumbrances, in general, is the sole and unconditional owner thereof, within the meaning of such a clause in an insurance policy, it follows that a mortgagor is the sole and unconditional owner of the mortgaged property, as he is, at least in equity, the real owner." Numerous decisions from different jurisdictions of the country are cited in support of those texts. In another treatise the rule is thus stated:

"Where a mortgage is regarded merely as giving the mortgagee a lien by way of security and not as operating to transfer an estate, the existence of a mortgage or other lien upon property has been quite uniformly held not to amount, prior to foreclosure, to a breach of a condition in the mortgagor's policy that the insured's

interest shall be entire, sole and unconditional owner-ship, the stipulation being considered not to refer to a mere encumbrance.    And the same rule has been generally adopted even where the common law theory of a mortgage prevails, notably in the case of a mortgage on personal property.    A trust deed, being in effect a mortgage, stands on the same footing and does not interfere with the grantor's unconditional ownership. Similarly a deed absolute but intended as a security does not vitiate a policy, for the grantor can compel a reconveyance of the bare title.    Likewise a bill of sale intended as security, the vendor retaining possession of the property, does not render the policy invalid." [19 Cyc. 694.]  To the same effect is 1 May, Insurance (4 Ed.), sec. 487.  The text above is upheld by many cases and the general tenor of the decisions conforms to the excerpts from the text-books, though possibly a decision may be found here and there of a contrary tenor.  See, too, as directly in point Van Kirk v. Insurance Co., 79 Wis. 627; Dolliver v. Id., 128 Mass. 315; Insurance Co. v. Eilgus, 88 Pa. St. 107; Chandler v. Insurance Co., 88 Pa. St. 224; Insurance Co. v. Dunham, 117 Pa. St. 460.    In no jurisdiction is the doctrine contended for by defendant more emphatically  repudiated than in Pennsylvania, as will be seen by reading the cases cited from the reports of that State.    In one of them (Chandler v. Insurance Co.) the condition in the policy was that the insured had the entire, unconditional and sole ownership of the property.    Two facts were relied on as breaches of this condition; that the insured had only a contract for the title on payment of the purchase money, and that he had assigned his contract by way of mortgage to a third party to secure a debt.    Concerning these conditions the court said:

"If the court meant to hold broadly that because the interest of the plaintiff was equitable, subject to the

payment of a balance of purchase money, it was not the entire, unconditional and sole ownership of the property, it was in error, as has just been decided in Insurance Company v. Wilgus, ante, 107.     There was in this policy, as in those cases, no condition requiring a disclosure of encumbrances.     But if it was meant to decide that the assignment of the Chase contract by the plaintiff to Berry deprived him of such ownership, it was equally wrong.     The declaration of Berry as to that assignment was in evidence, in writing, and made it ·a mortgage merely, held as collateral security for a debt then owing to him and for further advances, and the power of sale did not change its character." [88 Pa. St. l. c. 228.]

It is noteworthy that the Pennsylvania court has adopted this interpretation of such conditions in insurance policies though said court clings closely to the ancient doctrine that a mortgage conveys an estate on condition and vests the mortgagee with instant right of possession.     [Tryon v. Munson, 77 Pa. St. 250.] Not without relevancy to the point involved are the observations of Judge SCOTT in Morrison's Admr. v. Insurance Co., 18 Mo. 262, 266 et seq., regarding the limit of the duty of an applicant for insurance to declare liens and incumbrances on the property to be covered, as affected by the custom of companies to put minute inquiries regarding the title.     That able judge commended on the probability of the applicant's not realizing the necessity of disclosing judgments and tax liens and such defects, whereas experience would show the necessity to underwriters.     The essential question in cases of this character is what is the purpose of the stipulation that the interest of the insured is sole and unconditional ownership, or similar expressions.     Concerning the meaning of such clauses it is said in 2 Cooley, Insurance, 1369, their purpose is to prevent a party who has an undivided or contingent, but insurable interest in prop-

erty, from appropriating to his own use the proceeds of the policy taken on the valuation of the entire and unconditional title, as if he were the sole owner, and to remove the temptation to perpetrate fraud and crime; citing Imperial Ins. Co. v. Dunham, 117 Pa. 460.   The text then proceeds: "It therefore follows that the clause is in most cases held to refer to the character and quality of the title—to the actual and substantial ownership rather than to the strictly legal title.   *In other words, the insured's interest must be of such nature that he will sustain the whole loss if the property is destroyed.*"   The remark we have emphasized is identical with the meaning of such a stipulation as interpreted by our Supreme Court in the Gaylord case.   It is obvious in the present instance that, notwithstanding the outstanding mortgage, this plaintiff sustained the whole loss by the fire.   It is bound to pay the balance of the debt secured by the mortgage, notwithstanding the destruction of the property, and inasmuch as it held a deed conveying a title in fee simple to the ground, and was in possession as owner when the fire occurred, we hold its interest was not other than sole and unconditional ownership, though, perchance, it might lose its title by foreclosure of the incumbrance.   We do not see that in this respect the case differs from Gaylord v. Insurance Co. and Boulware v. Insurance Co., decided by the appellate courts of this State, or from the decisions of the Supreme Court of Pennsylvania and the courts of last resort of nearly all other jurisdictions.

The other warranty said to be breached is that the insured should keep insurance of three times the amount of its policy in the Liverpool, London & Globe Insurance Company, concurrent with the policy issued by the defendant.   As stated, the argument for defendant is that the identical property covered by defendant's policy was not covered by the Liverpool, London & Globe policy.   The descriptions of the property covered in

the two policies will accompany the opinion.    Careful comparison has convinced us that while the order in which the property is described varies somewhat, and while perhaps names of properties can be found in one policy that are not contained in the other (for instance, in the Liverpool policy the words "utensils, apparatus and catalogues" are found) yet the property covered is the same in both policies.    This stipulation was not one permitting concurrent insurance to a certain amount, but one requiring plaintiff to take out concurrent insurance.    The intention of such a stipulation is no doubt, to diminish the responsibility of defendant in case of fire, by having the loss apportioned between it and the other company.    [Rubber Co. v. Insurance Co., 46 Atl. (N. J.) 777.]    The purpose of the covenant will be fulfilled if the property covered by the two policies though described differently, is the same, so there can be an apportionment of the damages between the two companies if a fire happens.    Such an apportionment, we think, would have to occur in the present instance.

The judgment is reversed and the cause remanded. All concur.