TERMINAL ICE AND POWER COMPANY, Appellant, v. AMERICAN FIRE INSURANCE COMPANY, Respondent.

Kansas City Court of Appeals, April 30, 1917.

1. **FIRE INSURANCE: Ownership of Property Insured.** The acceptance of a fire insurance policy containing a provision which declared it should be void and of no effect "if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground now owned by the insured in fee simple" is equivalent to a declaration that the insured was the unconditional and sole owner of the building insured and of the fee simple title to the ground, and that if such declaration were not true, the policy was void from the beginning.

2. ———: ———: **Fee Simple.** The term "fee simple" has never been used to distinguish between legal and equitable estates, but to define the quantity and duration of estates and to denote the largest estate in land known to the law.

3. ———: **Mortgage: Breach of Condition.** A mortgage being a mere lien on the land does not affect the quality of the fee simple estates of the mortgagor and until the mortgagee enters for breach of the condition, the mortgagor continues to be the owner of the estate and cannot be regarded as the owner of less than a fee simple title.

4. ———: **Change of Ownership: Option on Property Insured.** Where the insured gives an option before a loss by fire occurs, to another to purchase the property insured, no breach of the provisions of the policy concerning changes of interest in the property insured, other than by the death, of the insured, is committed, such option not being exercised until after fire.

5. ———: **Foreclosure on Sale of Property Insured: Policy Void.** The advertisement of property for sale under a deed of trust after a policy of insurance has been issued thereon, with the knowledge of the insured, renders the policy void, if it contained a provision to the effect that the policy shall be void "if, with the knowledge of the insured, foreclosure proceedings be commenced, or notice given of the sale of any property covered by this policy by virtue of any mortgage or deed of trust."

6. ———: **Cloud on Title.** The sale of the property insured under an execution, constituted only a cloud on the title, and not a complete transfer of the property, under the facts disclosed in this case, and the insured was not thereby prevented from recovering on the insurance policy the property having been destroyed by fire subsequently to the sheriff's sale.

196 M. A.—16

7. ———: Notice of Encumbrance Waived. The clause in a rider on a fire insurance policy providing that "notice of encumbrance waived" has no reference to the clause in the body of the policy providing that the policy should be void if foreclosure proceedings be commenced, or notice of sale given, under a mortgage or deed of trust. That clause refers to encumbrances and not to a sale, or notice of a sale under a mortgage or deed of trust.

8. ———: Waiver: Unearned Premium. Where a provision in the policy provides that if the policy is cancelled or becomes void, the premium having been actually paid, the unearned portion shall be returned on surrender of the policy, and the insurer knew nothing of the ground of forfeiture until after the fire it cannot be deemed to have waived the forfeiture provisions of the policy by reason of the fact that it has failed to return the unearned portion of the premium, as the nature of this contest shows no indication of any surrender of the policy, but, on the reverse, an earnest effort to enforce it. Hence, the conditions have not yet arisen which would require the defendant to make a return of the unearned premium.

Appeal from Jackson Circuit Court.—*Hon. Allen C. Southern*, Judge.

AFFIRMED.

*Lathrop, Morrow, Fox & Moore,* and *Boyle & Howell* for appellant.

*Fyke & Snider* for respondent.

BLAND, J.—This is an action on a policy of fire insurance issued to plaintiff by defendant September 20, 1912, on a two-story building and appurtenances which were a part of an ice manufactory plaintiff owned Kansas City. The plant was in operation but this particular building was not being used and was insured as an unoccupied building. At the time of the fire which wholly destroyed the property the policy, which was issued for a term of one year, had not expired, and five other policies issued by different insurance companies and insuring the same building were held by plaintiff and were in force when it was destroyed. All of the companies refused to acknowledge liability and adjust the loss, plaintiff

brought separate suits to collect the insurance, suffered defeat in the circuit court and appealed each case to this court. The cases were submitted at the same time, have common issues, and our decision in the instant case will dispose of the controlling questions in the others.

The policy, in the standard form, contains the following conditions and agreements which are the basis of the principal defenses interposed in the answer: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the interest of the insured in the property be not truly stated herein, or if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple, or if with the knowledge of the insured foreclosure proceedings be commenced, or notice given of the sale of any property covered by this policy by virtue of any mortgage, or trust deed, or if any change other than by the death of the insured take place in the interest, title or possession of the subject of insurance whether by legal process or judgment, or voluntary act of the insured."

The answer alleges breaches of the foregoing provisions at the time of the loss, as follows: First, that after the policy was issued and before the loss the property was advertised for sale under a deed of trust with the knowledge of plaintiff and without provision therefor being indorsed on the policy and that such advertisement was being published at the time of the loss; second, that the interest of plaintiff in the property was not truly stated in the policy; third, that the building insured was on land not owned by plaintiff in fee simple and, fourth, that a prohibited change in the interest and title occurred in virtue of an option which plaintiff, after the policy was issued, gave to another corporation—the City Ice Company— to purchase plaintiff's interest in the property, "and that thereafter the said contract, or option, was exer-

cised by the said City Ice Company and whatever interest or title, if any, the said plaintiff had in said property was purchased by the City Ice Company and conveyed by the said plaintiff to it  . . .  and that at the time of the fire plaintiff had no interest in the subject of insurance, etc.''

The reply is a general denial and a plea of waiver. The cause was tried without the aid of a jury and the views of the court on issues of law and fact were clearly defined in rulings on declarations of law asked by plaintiff.

The material facts of the case chronologically stated are as follows: The property insured was a part of a manufactory owned by W. F. Lyons who in 1908 transferred it to a corporation known as the W. F. Lyons Ice and Power Company of which he was the principal stockholder and moving spirit. The corporation began its business career (which was shortlived and disastrous) by issuing and selling bonds for $100,000 which it secured by a first mortgage on all its property. Afterwards on November 5, 1909, it further encumbered the property with a second mortgage or trust deed executed and delivered to John H. Lynds, trustee, to secure notes for $20,000 for money borrowed for the use of the company. These notes were owned by Howard Vanderslice, J. S. Chick, John H. Lynds and Fred Wolferman and in December, 1909, the control of the corporation and its property and affairs was surrendered to these four holders of the second mortgage notes whose number was reduced to three by the withdrawal of Wolferman who sold his interest to the others. In 1910 suit was brought to foreclose the first mortgage and that suit was pending when the policy in question was issued. To protect their interests as second mortgagees, Vanderslice, Chick and Lynds bought and became the owners of large part of the bonded indebtedness and thereby obtained control of the foreclosure suit. They also became the owners of all of the capital stock of the W. F. Lyons Ice and Power Company, and Lyons

retired from the corporation and its affairs. At that time the corporation was on the verge of bankruptcy, had lost its credit and had a bad reputation in the business world. Vanderslice, Chick and Lynds, in an obvious effort to word off the attacks of creditors as well as to escape other consequences of such bad reputation, had the name of the corporation changed to the Terminal Ice and Power Company; early in 1911, and incorporated another company under the name of the Sheffield Ice Company which operated the factory under a lease from the Terminal Company for a term of two years. Both of these companies were controlled by Vanderslice, Chick and Lynds, who owned all the stock of both, the stock of the Sheffield Company being paid by the transfer to that company of the second mortgage notes.

About the time of these changes, i. e. April 3, 1911, the Gate City Bank, a general creditor of plaintiff was given judgment for about $1700 in an action against the Lyons Company as defendant, and had execution issued and levied on the factory including the building afterwards covered by the policy in suit. The property was sold at execution sale and bought in by the bank which received the sheriff's deed April 5, 1912. Thereafter the bank made unsuccessful attempts in court to gain possession of the property and did not wholly discontinue such efforts until October 6, 1913, when it compromised its demands with the attorney for Vanderslice, Chick and Lynds for $200 in cash and executed a quitclaim deed as directed by the attorney.

On April 2, 1913, while the factory was being operated by the Sheffield Company, plaintiff gave a written option to another corporation—the City Ice Company—to purchase the plant and in February, 1913, executed a lease to the City Ice Company under which that company as lessee took possession of the property about June 1, 1913, and proceeded to operate the factory. The fire occurred June 17th and on June 30th the City Ice Company formally notified plaintiff in writ-

ing of its decision to exercise the option and afterwards the sale was consummated.

At about the time the City Ice Company took charge of the plant under the lease and shortly before the fire, Vanderslice, Chick and Lynds, acting in the name of the Sheffield Company, the book holder of the second mortgage notes which then amounted to about $30,000, had the trustee, in the deed of trust securing the notes, advertise the plant for sale under the terms of that trust deed.

This sale was made about two weeks after the fire and the property was sold to Vanderslice who bid $2,000 and a trustee's deed was executed and delivered to him by Lynds, the trustee. The attorney for Vanderslice, Chick and Lynds testified that the advertisement and sale of the property under the second trust deed was pursuant to the request of all the parties in interest, viz., his clients and the City Ice Company, who desired "this title straightened out." We understand him to mean that the purpose of the sale was to secure the plant against the attacks of the general creditors of the old Lyons Company in order that the property might be sold and conveyed, clear of all incumbrances, to the City Ice Company.

This sale could not affect the lien of the first mortgage but since the bonds it secured were owned or controlled by Vanderslice, Chick and Lynds, that mortgage and the suit to foreclose it did not stand in the way of the purpose to convey the property clear of incumbrances. The value of the entire plant appears from the evidence to have been approximately $110,000, or about $20,000 less than the total mortgage indebtedness. Consequently there was no equity in the property to which general creditors could look for the payment of their demands. This condition of insolvency resulted from the management of Lyons. The activities of Vanderslice, Chick and Lynds, after they secured control of the corporation appear to have been prompted by a purpose to extricate the corpora-

tion from its pecuniary difficulties without resorting to bankruptcy proceedings to the end of preventing loss on their holdings under the second deed of trust.

Passing, for the present, the subject of the effect on the interest of plaintiff in the property of the execution sale procured by the Gate City Bank we shall discuss and determine the issues raised by the specific defenses· set forth in the answer. First we shall consider the defense that plaintiff, at the time of the issuance of the policy, was not the sole and unconditional owner of the building insured, nor the owner in fee simple of the ground on which the building stood and, therefore, that the policy was void under the provision which declared it should be void and of no effect "if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple."

It may be conceded for argument that the acceptance by plaintiff of a policy containing such provisions was equivalent to a declaration that plaintiff was the unconditional and sole owner of the building insured and of the fee simple title to the ground and that if such declaration were not true, the policy was void from the beginning. [Mers v. Insurance Co., 68 Mo. 127.] With this concession the question to arise is this: Was plaintiff, when the policy was issued, the sole and unconditional owner of the building and the owner of the fee simple title to the ground? The change of the corporate name of plaintiff from the W. F. Lyons Ice & Power Company to the Terminal Ice & Power Company worked no change in the entity of the corporation which remained the same.

Plaintiff was the owner both of the building and the ground and was the sole and unconditional owner of the building and the owner of the fee simple title to the ground, unless we shall find that the ownership of the building and the title to the ground were made conditional by the two mortgage liens.

The term "fee simple" has never been used to distinguish between legal and equitable estates but to define the quantity or duration of estates, to denote the largest estate in land known to the law. A mortgage being a mere lien on the land does not affect the quality of the fee simple estate of the mortgagor and until the mortgagee enters for breach of the condition, the mortgagor continues to be the owner of the estate and cannot be regarded as the owner of less than a fee simple title. [Leather Company v. Insurance Co., 131 Mo. App. 701; Kinkele v. Wilson, 29 N. Y. Supp. 27; Loventhal v. Insurance Co., 112 Ala. 108; Conn. Fire Ins. Co. v. Colo. & Co., 116 Pac. (Colo.) 154; Ark. Ins. Co. v. McManus, 110 S. W. (Ark.) 797.]

Since the policy did not mention liens and incumbrances the proviso that plaintiff must be the owner of the ground in fee simple was not breached by the existence of the two mortgage liens. The same rule controls the definition of the term "unconditional and sole ownership" of the building. That provision did not refer to incumbrances or liens, but to the character and quality of the title. As is said in Assurance Co. v. Nalls, 44 S. E. 896; "The authorities are practically unanimous to the effect that an incumbrance is not an estate in, or title to the property within the meaning of the provision that if the interest of the assured be other than an unconditional or sole ownership the policy shall be void." [See also Leather Co. v. Insurance Co., supra; 2 Cooley's Briefs on Insurance, 1378; 19 Cyc. 694; Insurance Co. v. Colo., etc. Co., supra.]

Although Vanderslice, Chick and Lynds were holders of the second mortgage notes they controlled plaintiff and its property, not as mortgagees in possession after condition broken, but as stockholders of the corporation. At no time prior to the fire was plaintiff out of the possession of the plant, either itself or by tenants. For two years it was in possession by its lessee the Sheffield Company and that tenancy was succeeded by the tenancy of the City Company under

the lease executed in February, 1913. The latter company was in possession as such lessee at the time of the loss and so it appears that plaintiff was a mortgagor in possession of the building insured and the ground it occupied when the policy was issued and that no change in title or possession occurred between that date and the date of the fire.

This brings us to the defense "that a change other than by the death of the insured took place in the interest and title of the subject of insurance" because of the option plaintiff gave the City Company to purchase the property. That option was not exercised until after the fire and, as stated, the City Company on and prior to that date, was in possession only as lessee.

The change of interest referred to in the policy, in view of the rules which frown upon forfeitures and require that insurance policies shall be strictly construed against the insurers, means some change which would cause the loss by fire to fall on the buyer and does not relate to a grant by the insured of some right which does not change the party carrying the risk nor give the grantee more than a mere option to purchase the property. [Mackintosh v. Insurance Co., 89 Pac. 102, 150 Cal. 440; House v. Insurance Co., 121 N. W. (Ia.) 509.]

If the City Company after the fire had declined the option there can be no question that the loss would have fallen on plaintiff, the insured, and, therefore, plaintiff was carrying the risk and had not changed its interest in the property within the meaning of the proviso.

The defense that plaintiff had no title, interest or ownership in the property when the policy was issued, because of the sale under the Gate City Bank execution may be disposed of on the ground that under the facts disclosed in the record it appears that the interest acquired by the bank under the sheriff's deed was not a substantial interest or anything more than a mere cloud on the title which the bank was using

to force a compromise out of Vanderslice, Chick and Lynds. The fact that the bank accepted a settlement of $200 for a quitclaim deed and consequent release of its demand for over $1700 at a time when plaintiff was compelled to remove all clouds from the title in order to convey the property to the City Company indicates the real nature and substance of that cloud.

The next defense is predicated on an alleged violation of the provision that the policy shall be void ''if with the knowledge of the insured foreclosure proceedings be commenced, or notice given of the sale of any property covered by this policy by virtue of any mortgage, or trust deed.'' In the former opinion in this case, written by JOHNSON, J., and delivered on May 1, 1916, it was held that, as this defense is based on the advertising and sale under the second deed of trust, instead of increasing the risk which defendant had agreed to assume this proceeding tended to lessen that risk, as the sale under the second deed of trust was for the purpose of improving plaintiff's interest in the property insured. That opinion reversed and remanded the case and the respondent applied to the supreme court for a writ of *certiorari* which writ was granted by said court, and in its opinion, delivered on the 19th day of February, 1917, the supreme court took a different view from that given by JOHNSON, J., supra, and held that the facts in this case make it come within the rule laid down in the case of Sprinfield Steam Laundry Co. v. Traders Ins. Co., 151 Mo. 90, for the reason that it makes no difference in this case whether the proceedings to foreclose said second mortgage tended to lessen the hazard or not. The supreme court held that antecedent reasons for making a contract cannot aid the court in construing this contract when it is clear and free from ambiguity. It held that the foreclosure clause here in question is a part of a solemn contract made between corporations, both of which are competent to make contracts; that there is no phase of equitable jurisdiction involved or

invoked; that it is merely a question as to what that clause means and not to write into it terms or conditions which it does not contain, and that as it is undisputed that the property destroyed was being advertised for sale under a deed of trust when the fire occurred and that the remainder of the property was so sold pursuant to such advertisement, shortly after the fire, the clause under construction is clear and unambiguous, and that, regardless of whether the hazard was or was not increased the strict terms of the policy must be enforced.

And in view of such a ruling on the part of the supreme court it becomes necessary for us to hold in this case that that provision of the policy providing that "if with the knowledge of the insured foreclosure proceedings be commenced, or notice given of the sale of any property covered by this policy by virtue of any mortgage, or trust deed" has been violated and the policy voided.

However, in its brief filed here for our consideration, after the receipt by us of the mandate from the supreme court in this case, appellant contends that the clause in the rider attached to the policy providing that "notice of encumbrance waived" is a provision waiving that part of the body of the policy which provides that "if with the knowledge of the insured foreclosure proceedings be commenced, or notice given of the sale of any property covered by this policy by virtue of any mortgage, or trust deed," the policy shall be void.

This same contention was made by appellant in its original brief filed in this case before the delivery of the original opinion written by JOHNSON, J., as aforesaid. However, we have found from a reading of that opinion that nothing is said therein in reference to this point now being further urged by appellant. We are not greatly impressed with this point. The provision in the rider "notice of encumbrance waived" refers to encumbrances and not to a sale, or notice of a sale under a deed of trust or mortgage. That there

is a vast distinction between the two is well recognized. We can well see how the defendant might have been willing for the premium it charged plaintiff to insure the property with the second mortgage on it and yet not willing to insure it in case of proceedings to foreclose such mortgage. In order to hold that the clause in the rider "notice of encumbrance waived" applied in this case to encumbrances on real estate we would have to say that said clause is equivalent to a statement that defendant assented to the encumbrances on the property or to any other encumbrance or encumbrances that might thereafter be placed thereon, but we do not believe said clause was intended in this case to apply to encumbrances on real estate. But even if it were so intended it could not be said that by said clause defendant consented to anything but encumbrances or that it assented to a continuance of the insurance in case of foreclosure proceedings. Such proceedings might have increased the hazard of the risk. Defendant might not have cared to continue the risk in case of foreclosure proceedings. Had it known of such proceedings it might have examined the circumstances and granted its assent to such proceedings without conditions, or it might have required an additional premium for any increase of the hazard of the risk that might have been present. It might have refused altogether to carry insurance longer and in that case foreclosure might have been delayed or the policy surrendered and insurance procured elsewhere. In other words, defendant would be in a position to act on such matters as it saw fit.

It seems to us that it is apparent that the clause in the rider "notice of encumbrance waived" had no reference to the clause in the body of the policy providing that the policy should be void if foreclosure proceedings be commenced, or notice of sale given, under a mortgage or deed of trust.

But appellant claims that when construing the language of insurance policies effect must be given to every clause in the policy, and as there is no requirement in the policy that the assured shall give notice

of any encumbrance, or any provision that the policy shall be void in case the insured property, at the time the policy was written, was subject to an encumbrance of a mortgage or deed of trust, or that it should be void if such encumbrance be thereafter placed thereon without the consent of or notice to the insured, and there being no mortgage clause in the policy, that we cannot give any effect to the language of the clause in the rider "notice of encumbrance waived" unless we hold that it is related to the matter of foreclosure.

The policy is a standard form policy and is drawn so as to cover both real and personal property. However, the subject of the insurance in this case was real estate, but we find in the policy a provision as follows: "If the subject of insurance be personal and be or become encumbered by chattel mortgage . . . the policy shall be void." By a careful reading of the rider we find that while there are some provisions in it that were necessary to make the contract complete, in view of the surrounding conditions, still there are provisions in it that might not have been intended to apply to any such condition, in that it provides, among other things, for a gasoline stove permit, also privilege was granted to keep articles pertaining to other business, and to work over time, and to work at all hours. (The plant was not in operation.) So that we are compelled to conclude that the rider, as well as the policy, was originally drawn in very general terms and to cover both personal and real estate, and that the clause in the rider providing "notice of encumbrance waived" refers to the waiving of notice of any chattel mortgage on any personal property as provided in the body of the policy.

Appellant further urges the point that as defendant is insisting that the policy has been forfeited and has not returned the premium paid, or that portion of the premium which was unearned when the fire occurred, that it has waived the right to make such insistence.

By the terms of the policy plaintiff was entitled to the unearned premium only upon the surrender of the policy. What plaintiff would have been entitled to in the event of cancellation would be as a rebate or come-back before defendant by cancellation was relieved of a part of the risk it had incurred for the consideration. It would not be so relieved unless it should, upon the surrender of the policy, as the contract provides, return the unearned premium. But that condition has not arisen, as plaintiff is insisting that the policy is still in force and is not offering to surrender the policy. As was stated in Senor and Muntz v. Ins. Co., 181 Mo. l. c. 113-114:

"There is a provision in this policy which provides that if the policy is cancelled or becomes void, the premium having been actually paid, the unearned portion shall be returned on *surrender* of the policy, the company retaining the customary short rate. It is incidentally urged that the defendant is in no position to resist the recovery of plaintiff Senor, and, at the same time, retain the premium under this provision of the policy.

It will be observed that the condition of the policy is that the unearned portion shall be returned upon the surrender of the policy. From the nature of this contest, it falls far short of indicating any surrender of the policy; but the reverse, an earnest effort to enforce it. Hence, the conditions have not yet arisen which would require the defendant to make the return of the unearned premium, as provided in the contract of insurance."

From what we have said there is nothing in the "new" points briefed by appellant since this case came back to us from the supreme court. So far as appellant's rights are concerned, they were fully and finally determined by the opinion of the supreme court. And in its mandate that court has adjudged "that the record in said cause be remanded to said court of appeals for further proceedings *not inconsistent* with this

opinion.'' We cannot write this opinion other than the way we have written it without making it inconsistent with the opinion of the supreme court.

The judgment is affirmed. All concur.