MRS. H. A. TIFFANY, Respondent, v. QUEEN INSURANCE COMPANY OF AMERICA, Appellant.

Springfield Court of Appeals, February 6, 1918.

1. **INSURANCE:** Acceptance of Policy: Conditions.    The acceptance of a fire policy is equivalent to a declaration that a provision in the policy that insured was the sole owner was true, although insured never saw the policy or signed an application.

2. ———: Defenses: Issues.    Although an insurer answered that a policy was absolutely void because insured was not sole owner, but only had a dower interest, the court properly refused to sustain a

demurrer to the evidence which would give plaintiff nothing, where the insurer tendered a certain amount in court as being sufficient to cover insured's interest in the property.

3. ———: Conditions in Fire Policy: Waiver: Estoppel. Evidence *held* sufficient to warrant a finding that a fire insurance company's agent knew that insured only had a dower interest in a house, and that the company waived and was estopped to set up a defense that she was not solé owner; the agent having himself made out the application, which was not signed by insured.

4. TRIAL: Issues: Instructions. Where an insurance company admitted liability in some amount, and made a tender in court, the court properly refused to instruct that offers of compromise should not be construed as an admission of liability "in any amount."

Appeal from Dunklin Circuit Court.—*Hon. W. S. C. Walker*, Judge.

AFFIRMED.

*L. R. Jones* for appellant.

*Phillips & Cox* for respondent.

FARRINGTON, J.—Action on a fire insurance policy for $800, the face amount, with ten per cent thereof for vexatious delay, and asking an attorney's fee. The jury returned a verdict for $700 on the policy, together with $50 for vexatious delay and $50 as an attorney's fee. The circuit court overruled defendant's motion for a new trial only after plaintiff had agreed to remit the two sums last above mentioned, and the appeal is from the judgment for $700..

There is little dispute as to the law governing this appeal. The difference arises from opposite views as to the effect of certain facts.

The policy was on a dwelling house standing on a lot in Malden, Mo. In January, 1906, this property had been conveyed by one Pearson to H. A. Tiffany who, with his family, resided in the house until he died in May, 1909, after which his widow, the plaintiff, lived there.

Davis & Morris were the agents at Malden of the defendant company both having resided there as insurance agents for many years. For some reason, unexplained, Davis was not a witness at the trial.

H. A. Tiffany, owner of the property, died in 1909. In 1910, Davis & Morris, as defendant's agents, issued a fire policy on the dwelling on this lot in the name of H. A. Tiffany to run three years, knowing he was dead. When that policy expired Mrs. Tiffany was visiting in Oklahoma. She testified that Davis & Morris notified her the policy had expired and that she "wrote them and told them to reinsure at what she could collect if the house should burn and no more." This letter was not introduced in evidence. Davis then wrote her stating that the policy was written in the sum of $800 and that the premium was $12, which she paid by check. The renewal policy was written in the name of Mrs H. A. Tiffany. A year later the fire occurred.

In the petition the plaintiff in setting forth her interest in the dwelling alleged that it was "then and now owned by this plaintiff as her homestead and with a dower right thereon."

In the answer, among others the defense was made that the insurance policy sued on provided that if the interest of the assured be or become other than the unconditional, unincumbered and sole ownership of the property, or if the building insured be on ground not owned by the assured in fee simple, the policy would be void; that at the time the policy was issued and at all times since the plaintiff only owned a dower interest which was the extent of her insurable interest; that at the time of the issuance of the policy plaintiff represented that she owned a fee simple interest (of which, we may say here, there is no proof); and that the valuation and permitted insurance as contained in the policy was placed under the belief that plaintiff's insurable interest was that of fee simple owner, and that had the facts been known defendant would not have issued this policy.

Plaintiff in her reply pleaded estoppel of the defendant to set up the foregoing defense because of the fact that Davis & Morris, its agents, with full knowledge that Tiffany was dead, and that plaintiff was his widow living in said dwelling, issued a policy on this house in 1910 in the name of H. A. Tiffany, and that on its expiration in September, 1913, they issued the policy in question; that they issued this policy in the name of Mrs. H. A. Tiffany of their own volition with full knowledge of the condition of the title and collected of her the premium.

Defendant's contention is that plaintiff wholly failed to prove the estoppel pleaded in her reply and that its demurrer to the evidence should have been sustained. Defendant concedes that Davis & Morris had power to waive a condition that would vitiate the policy provided they had knowledge of the breach of the condition at the time.

As stated, there is no proof whatever that plaintiff made any representations as to the extent of her interest in this house. She merely wrote Davis & Morris to reinsure at what she could collect if the house should burn and no more. It appears that Davis was an employee in a bank at Malden with which the Tiffany family did business and at which the deed was kept. She testified: "Q. Will you tell the jury who was the custodian of the deed that has been offered in evidence today at the time that insurance was taken out" (referring to the policy issued in 1910 as will presently appear)? "A. It was in the safe at the Dunklin County Bank. Q. Did Mr. Davis have any knowledge of it? A. Yes, sir, he unlocked it and gave the deed to Mr. Morris and I told him when he got through with the deed to put it back" (which shows that she must have been referring to the time the 1910 policy was issued because she went to Oklahoma in May, 1913, and did not return until January, 1914, and the policy sued on was issued September 29, 1913.) "Q. You say Mr. Davis knew of the conditions of it when the first policy

of insurance was taken out in Mr. Tiffany's name? A. Yes, sir.''

Morris, called as a witness by the plaintiff, testified that he was not personally acquainted with H. A. Tiffany and thought he was alive when the first policy was issued. He could not recall writing the first policy, and did not remember whether or not he had ever seen the deed, but did not know how he could have gotten the description if he had not had the deed, and he ''judged from looking at the policy and noting the description that he would have had to have some other instrument to get the description from.'' He also testified that at the time the policy sued on was issued Mrs. Tiffany was not in Malden, and that he and Davis issued this policy. Also: ''Q. You are an attorney at law and were at the time this policy was issued? A. Yes, sir. Q. And you were acquainted with the title to that piece of property, were you not? A. I was not. I was not, no, sir, legally. Q. Will you state to the jury since you issued the policy from September, 1910, to September, 1913, in the name of H. A. Tiffany, why did you issue this policy in the name of Mrs. H. A. Tiffany? A. That is a question that I can't answer for this reason: There was a lapse between the issuance of these two policies. There had been an expiration of the policy in the name of H. A. Tiffany. I find reference only to the record, and Mrs. Tiffany not being in Malden, Mr Davis informed me he had a letter from Mrs. Tiffany requesting the issuing of a new policy. I wrote up this policy here purporting to be the insurance on the dwelling in question and delivered it to Mr. Davis in the name of Mrs. Tiffany. It was the intention to deliver the policy to Mrs. Tiffany. She left her papers in the bank, and I gave it to Mr. Davis to deposit.'' The witness then went on to state that he wrote the policy based on fee simple ownership, believing she owned it absolutely—and this was as far as the evidence went on that phase as defendant's evidence was silent concerning that issue—but in passing on the demurr·· to plaintiff's evi-

dence only such evidence is to be considered as is favorable to the plaintiff.

Though it does not appear that plaintiff ever saw this policy previous to the fire, this would make no difference. The acceptance of the policy with such provision as that contained in the policy before us was equivalent to a declaration that such facts were true. [Mers v. Insurance Co., 68 Mo. 127; Terminal Ice & Power Co. v. American Fire Ins. Co.,—Mo. App.—, 194 S. W. 722, 1. c. 724.] A parallel case on the facts, but absent the question of waiver, is that of Overton v. American Central Ins. Co., 79 Mo. App. 1. In that case, as in this, there was no written application and nothing was said by either party as to title. The policy contained a similar provision. It appears from appellant's brief in the case that the interest of the plaintiff was as owner of a homestead right, the property having belonged to her husband and descended to his heirs as in our case. The court held that putting the policy away without reading it amounted to a declaration that the title was as stipulated in the policy. The insurance agents in that case likewise acted on their own initiative in inserting the name of the plaintiff as the assured. But a sentence in that opinion shows there was no evidence in that case that the agents knew the true state of the title.

Our case is governed by such decisions as that in O'Brien v. Greenwich Ins. Co., 95 Mo. App. 301, 68 S. W. 976, and La Font v. Home Ins. Co., 193 Mo. App. 543, 182 S. W. 1029.

Defendant at no time had insisted on a forfeiture of all rights under the policy. Though in its answer it set up the fact that plaintiff had only a dower interest in the property, and the policy provision that if the interest of the assured be or become other than the unconditional ownership of the property or if the building be on ground not owned by the assured in fee simple, the policy would be void, yet this is followed by a tender of $433.30 into court for plaintiff as defendant's view of the amount she was entitled to recover;

and throughout the trial defendant renewed this tender. Manifestly, in view of this plea and this attitude it would have been error for the court to have sustained its demurrer to the evidence which would have been a direction to the jury to find that plaintiff was not entitled to recover anything.

But the contention that plaintiff wholly failed to sustain by evidence her plea of estoppel is also pressed by defendant in its contention that the 'circuit court erred in giving plaintiff's instructions 1 and 3 which permitted the jury to pass on the question whether defendant's agents were acquainted with the title of the property in transacting defendant's business.

It is certainly fair to infer that in 1910, in transacting business for the defendant, Davis & Morris took the deed from Pearson to H. A. Tiffany out of the bank in order to obtain the description of the property to be inserted in the policy that was then issued in the name of H. A. Tiffany, and that Morris, an attorney, had the deed before him when that policy was written; also, according to plaintiff, that Davis was well acquainted with the plaintiff and knew her husband was dead and worked at the bank where the Tiffany family did business and "that he knew the conditions of it" when the first policy was issued; and that the policy sued on was issued by Morris in the name of Mrs. H. A. Tiffany and passed into the hands of Davis who was to deposit it in the bank. With no representations whatever from plaintiff as to the nature of her interest these agents issued a policy in her name in the sum of $800 after having been told to insure at what plaintiff could collect if the house should burn and no more. The fact is that the issuance of a policy for $800 in her name resulted. The act of Morris, who claimed he did not know Tiffany was dead, in changing the name of the assured from H. A. Tiffany to Mrs. H. A. Tiffany may have had some weight in leading the jury to believe that he had made inquiry as to the extent of her ownership, and that $800 was the value of that ownership in his judgment. At any rate, there is some evidence

that these agents while transacting business for the defendant at one time knew that the deed to the property, which was considered valuable enough to be kept locked up at the bank—indicating to the ordinary mind that it evidenced the last transfer of title—was in the name of H. A. Tiffany, and that at least one of the agents who handled the policy in question knew at the times both policies were issued that H. A. Tiffany was dead, from which we hold it could reasonably be inferred that they had knowledge of the condition of the title at the time they of their own volition issued the second policy to the plaintiff.

Though we have disposed of the contention presented, to-wit, the question of waiver, the fact is that the reply of the plaintiff pleaded estoppel, not waiver, so that it may not be amiss to refer to the criticism offered by the St. Louis Court of Appeals in Nixon v. Insurance Co., 69 Mo. App. l. c. 357, of opinions in this character of cases which are put on the ground of waiver, saying they should be decided on the principle of estoppel—that is, that the insurance agent in filling up the application acted as the agent of the insurer and that the latter is precluded from denying what its agent once asserted. [See Thomas v. Insurance Co., 20 Mo. App. 150; Franklin v. Insurance Co., 42 Mo. 456.]

Defendant complains of the refusal of its third instruction which told the jury that all testimony offered by plaintiff as to offers of compromise in this suit made by defendant shall in no way be construed as an admission by defendant that defendant was liable to plaintiff on the policy sued on in any amount. The last three words in the instruction—"in any amount"—justified the court in refusing the instruction because the defendant from the time the loss occurred admitted liability in some amount, and in the answer and throughout the trial tendered an amount which it contended plaintiff was entitled to receive under the policy.

Defendant complains of the giving of an instruction which merely defines "totally destroyed" and

"total loss" (and we may say that the definition given was correct), and of the giving of an instruction which permitted the jury to find that there was a total loss, because, the defendant says, there is no evidence upon which the jury could find that the house was totally destroyed. Without going into detail we hold that there was ample evidence upon which to base a finding that there was a total loss as defined in the instruction.

The judgment is affirmed. *Sturgis, P. J.,* and *Bradley, J.,* concur.