# WESTERN & A. PIPE LINES v. HOME INS. CO.

## APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY.

*Argued October 21, 1890—Decided October 5, 1891.*

(*a*) An insurance company insured a pipe-line company, incorporated under the act of April 29, 1874, P. L. 73, and its supplement, act of June 2, 1883, P. L. 61, against loss or damage by fire " on oil while contained in " a certain tank in a specified position on leased lands. A flood carried the tank away from its location to another point on the leased lands, where the oil therein was destroyed by fire :

1. The object of the contract was indemnity. With that object in view, the terms of the policy should be construed liberally ; and where any doubt exists as to their meaning, it should be resolved in favor of the insured, rather than in the interest of the insurer. Words of the policy susceptible of two interpretations, should be construed to sustain the claim of the insured.

2. Moreover, every consideration of public policy demands that insurance companies should be required to deal with their customers with entire frankness ; and it is not the province of courts to indulge in conjectures favorable to such insurance companies as are disposed, upon mere technicalities, to avoid the payment of honest claims.

3. Tested by these principles, the position that the description of the property insured was, in effect, a warranty that in case of fire the oil destroyed should not only be contained in the iron tank, but that the tank itself should remain where it was when the insurance was effected, otherwise the insurance company would not be liable, was not tenable.

4. Assuming that the description of the tank's location may be regarded as in the nature of a warranty thereof, it can only be construed as a warranty of location when the insurance was effected, and that the tank should not be voluntarily removed by the insured ; not an absolute warranty, that it would thereafter remain in the same location.

5. The insurer, in a letter written soon after the loss, and in the affidavit of defence filed to the action brought on the policy, having set up as the sole defence against payment the removal of the tank from its location when insured " by a visitation of providence," it was estopped from setting up on the trial the defence that the oil destroyed was not the property of the insured.

6. Moreover, the insurance company, when it issued the policy, was chargeable with knowledge of the corporate powers of the plaintiff company, and the nature of its business in the storage and transportation of oil ; or, if not, then at least with knowledge of the usual and customary methods of conducting the business pertaining to the property which it insured.

7. Such being the case, though the insured was not the absolute owner of the oil, yet, being bound by its contract with its customers to protect them against the loss of it by fire, the insured, to the extent of the value of the oil, had an insurable interest therein, and in a certain sense was at least a quasi owner of the oil destroyed.

8. The insurance company having denied in toto its liability for the loss of the oil destroyed, it was not entitled to the benefit of a provision in the policy giving sixty days for the adjustment and payment of the loss. The plaintiff company, therefore, had the right to recover interest from the insurance company from the date of the loss.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 124 October Term 1890, Sup. Ct.; court below, No. 116 February Term 1891, C. P.

Returnable to the first Monday of January, 1891, the Western & Atlantic Pipe Lines, a company incorporated under the act of April 29, 1874, P. L. 73, and its supplement, act of June 2, 1883, P. L. 61, for the storage and transportation of oil, brought assumpsit against the Home Insurance Company of the city of New York, claiming to recover upon a policy of insurance against loss or damage on oil by fire.

On April 17, 1889, the defendant company filed an affidavit of defence made by its secretary, W. L. Bigelow, averring as follows :

" The insurance, to recover which this action is brought, was upon ' oil while contained in tank No. 1, on plan situate, detached 273 feet, on the Johnson farm,' valley of Chartiers creek. The said tank No. 1 was lifted from its place, and floated down the stream and against one of the bridges of the Chartiers railway spanning said creek; and while in that position, part of the oil contained in the tank overflowed and was set on fire by some person.

" By its contract, the defendant company only agreed to insure against loss by fire while the oil was in the tank at the spot where it stood when the insurance was effected; and the defendant is advised and believes that said tank and oil have been, by a visitation of Providence, moved therefrom ; and the loss having occurred while the oil was in a place of danger, not contemplated by the parties, the plaintiff is not entitled to recover.

Statement of Facts.

" The affiant further avers that it is impossible to determine, under the circumstances of the case, what proportion of the oil was destroyed by fire and what was carried away by flood."

On October 1, 1889, the defendant pleaded non-assumpsit.

At the trial, on May 28, 1890, the plaintiff company read in evidence a policy of insurance issued in consideration of the receipt of $62.50, insuring " the Western & Atlantic Pipe Lines against loss or damage by fire, to the amount of twenty-five hundred dollars.

" On. oil while contained in the iron crude-oil tank, known as No. 1, on plan situate, detached 273 feet, on the Johnson farm at Johnson's station, on the line of the Washington branch of the Pittsburgh, Cincinnati & St. Louis railroad, on leased ground, Washington county, Pa."

The paragraph last quoted was in writing. By the terms of the policy, the insurance was to be in force from June 28, 1888, to June 28, 1889, " the amount of loss or damage to be estimated according to the actual cash value of the property at the time of the loss, and to be paid sixty days after due notice and proofs of the same shall have been made and received," etc. The policy contained, also, the following provisions :

" 1. If an application, survey, plan or description of the property herein insured is referred to in this policy, such application, survey, plan or description shall be considered a part of this contract, and a warranty by the assured ; " . . . .

" 4. If the interest of the assured in the property be any other than the entire, unconditional and sole ownership of the property, for the use and benefit of the assured, or, if the building insured stands on leased ground, it must be so represented to the company and so expressed in the written part of this policy, otherwise the policy shall be void. When property has been sold and delivered, or otherwise disposed of, so that all interest or liability on the part of the assured herein named has ceased, this insurance on such property shall immediately terminate. Goods held on storage must be separately and specifically insured."

" 9. Persons sustaining loss or damage by fire shall forthwith give notice of said loss in writing, to the company, and, as soon thereafter as possible, render a particular account of such loss, signed and sworn to by them, stating whether any and what

other insurance has been made on the same property, giving copies of the written portion of all policies thereon, also the actual cash value of the property and their interests therein ; for what purpose and by whom the building insured or containing the property insured, and the several parts thereof, were used at the time of the loss ; when and how the fire originated." . . . .

" In case of loss on property held in trust, or on commission, or if the interest of the assured be other than the entire and sole ownership, the names of the respective owners shall be set forth, together with their respective interests therein."

It was then shown, in substance, that the plaintiff company, at its pumping station on leased land at Johnson's station on the Chartiers Valley railroad, had a number of storage tanks, each having a capacity of about thirty-five thousand barrels of oil. Into these tanks was pumped the crude oil from the tanks at the wells of the producers, and out of them was pumped the oil intended for transportation. On August 21, 1888, by reason of a flood in Chartiers creek, the ground upon which tank No. 1 was situated became overflowed, and the tank was lifted from its foundation and carried into the creek, and thence down the creek until it was caught by the abutments of the railroad-bridge crossing, where it was stopped within the bounds of the leased premises, at a distance of between four hundred and five hundred feet from its original position. The tank, though somewhat battered about the top, remained in that place from about nine o'clock on the evening of the 21st, until about nine o'clock in the forenoon of the next day, when by some means oil in the creek, accumulated above the bridge and about the tank, took fire. The fire reached the oil in the tank and burned it. There was evidence tending to show that the oil burned in the tank was 3,616.55. barrels. There being other insurance, it was claimed that the defendant company was liable for one fourth of the loss.

The plaintiff company's agent having given notice of the loss, with the proofs thereof, the following letter dated October 11, 1888, was transmitted to the agent by W. L. Bigelow, the defendant company's secretary :

" DEAR SIR : We have your favor of the 2d inst., and in reply beg to say we regret exceedingly the loss sustained by

Statement of Facts.

your company, and would be pleased to reimburse you if we could see wherein you had any claim upon us either in law or equity. We insured oil in an iron tank located in a safe position, upon a good foundation, and charged you a premium which we considered adequate in view of its position; but an unforeseen disaster, in the shape of a flood, carried the tank from its position to a more dangerous one, whereby it was destroyed. In denying liability in this case we fail to see wherein we hazard our 'reputation for fair dealing,' or do you any injustice."

J. W. Craig, testifying for the plaintiff company of which he was the president, was asked on cross-examination: "Q. Who owned the oil in tank No. 1, at the time of the fire? A. The various customers of the Western & Atlantic Pipe Lines." On re-direct examination, the witness was asked:

"Q. I wish to know if you, or the Western & Atlantic Pipe Lines had entered into a contract with the customers of the line, by which you were bound to insure the oil in the tank?"

Objected to, as incompetent and irrelevant.

By the court: Objection overruled; exception.[1]

"Q. I wish to know if you did replace the oil that was burned in this tank to your customers?—This to show that in carrying out this contract we have proved he entered into with his customers, when this oil was lost to the customers he replaced it barrel for barrel to the customers."

Objected to as incompetent and irrelevant.

"Q. On whom did the loss of this oil fall, on the customers, or the pipe lines?"

Objected to as incompetent and irrelevant, and a matter with which the insurance company had no concern.

By the court: Objection overruled; exception.[2]

"Q. At the time of the organization of the Western & Atlantic Pipe Lines, what action was taken by the stockholders in regard to the insurance of oil?—The object is simply to show they said to every person who ran oil into that line that the Western & Atlantic Pipe Lines would be responsible and bound by the action of the company."

Objected to, as incompetent and irrelevant.

By the court: Objection overruled; exception.[3]

In reply to the plaintiff's offers, admitted as above, the wit-

ness testified that the oil in the company's tanks was owned by the company's customers, and was held on storage, the company being entitled to a pipeage charge upon the sale of the oil to the consumer or refiner, and to a storage charge for such oil as remained in the line over thirty days; that the company had bound itself to its customers to keep the oil protected by insurance, and that when oil was lost the company purchased oil to replace it, barrel for barrel.

At the close of the testimony for the plaintiff, the defendant offering none, the court, McILVAINE, P. J., charged the jury in part as follows:

Now, gentlemen, a contract of insurance is an agreement for a consideration, to indemnify against loss. The extent and conditions of the indemnity are always to be found in the policy.

In this case, the contract, as we have already said, was to indemnify the plaintiff from loss by reason of fire, and the property covered by the agreement was "oil, while contained in the iron crude-oil tank known as No. 1" on this plan, situated at Johnson's station. It is incumbent on the plaintiff to show that the oil for which they seek to recover the insurance money, was in this particular tank No. 1, and to show that it was consumed while at the place where it was described to be, or where it was required to be by the terms of the policy. It is further necessary for them to show that the oil that was in that tank was destroyed by fire; that is, that the fire was the proximate cause of the destruction of the oil and of their loss, and not the remote cause. The insurance company claim that the proper construction of this policy, as it is written, would relieve them from any liability, for the reason that this iron tank which contained the oil, had left the place where it was constructed, and that the oil was burned, if burned at all in the tank, at a different place from where it was described to be when it was insured.

Now gentlemen, this raises a very close question; but being a question of law we are bound to construe it as best we can, under the light that we have. We know of no cases in the books that cover it exactly, and what is the proper construction of this policy in this particular, to our minds is a doubtful

question. But, as there is undoubtedly a contract of indemnity here, we feel like giving the benefit of this doubt to the assured; and therefore, [we instruct you that the simple fact that this iron tank had left the place where it was originally constructed, will not relieve the company; but that any oil which was burned while in tank No. 1, and while the tank was in such a state of preservation as to hold the oil there as it was originally pumped into it, is covered by this policy, and that the burning of the oil, under such circumstances, would be such a burning as required this company to indemnify the plaintiff for any loss they may have sustained thereby. The plaintiff, under the contract, was under an implied promise to keep the oil insured in the tank; but under our construction of the policy, the fact that the tank was moved by reason of this flood, before the oil was burned, would not relieve the company, if the tank remained whole and sound and the oil was burned while in the tank. Now, gentlemen, if you conclude that this tank was picked up by this flood bodily, and floated down the stream, and lodged from three to five hundred feet away from the place where it was constructed, against the abutments of the bridge, and remained intact, and in that way held this oil as an oil tank would hold oil, so that it could have been recovered by the company, and while there, in place of on the original foundation, the oil in the tank was burned, why, then, the contract of indemnity would be binding, and the defendant would be liable for such loss as the plaintiff might sustain by reason of the fire, or their proportionate share of the loss.] [4]

Now, as to the testimony bearing on this branch of the case. You must consider it, because you must determine the questions of fact. . . . . If, however, you conclude, after carefully examining the evidence, and are satisfied that this tank lodged down at this bridge substantially uninjured, and held this oil as it held it up above, and that the oil took fire there and was burned while in the iron tank known as No. 1, as described in the policy, then the defendant company would be liable; and the next question that arises is, how much oil was burned in the tank, and what was its value. . . . . .

Now, gentlemen, the defendant asks us to charge you as follows, and it is our duty to answer these points:

1. The defendant company having contracted to indemnify the plaintiff company for any loss resulting from fire to oil while contained in a certain tank, the defendant is not liable, in any event, for any oil which may have escaped from the tank before the fire and been thereby lost, whether by fire or otherwise.

Answer: Affirmed.

2. The burden of proof is on the pipe-line company to show what amount of oil was actually destroyed by fire while contained in the tank named in the policy; and if the jury find from the evidence that part of the oil escaped from the tank prior to the fire and was thereby practically lost, and if the plaintiffs have failed to offer any evidence from which the jury could ascertain what quantity was burned in the tank, or remained in the tank at the time of the fire, then the plaintiff cannot recover in this case, and the verdict should be for the defendant.

Answer: Affirmed, subject to what we have said in the general charge on this same question.

3. If the jury find from the evidence that the tank described in the policy, containing the oil which was insured, was carried away by the water and wrecked before the fire occurred, then under the terms of this policy the insurance ceased before the property was destroyed by fire, and their verdict should be in favor of the defendant.

Answer: This is affirmed, if the jury find from the evidence that the tank was so wrecked before the fire as to destroy it for the purposes of holding and storing oil.

4. The defendant company, by the terms of its contract, expressly limits its liability to loss by fire on oil in tank No. 1, a permanent structure in a definite location; if, therefore, the jury should find that prior to the burning, said structure was carried from its location and wrecked to such an extent as to lose its integrity as an oil tank, then liability of defendants ceased as to contents, and any subsequent burning would not make them liable.

Answer: An affirmance of this point, as a whole, is refused, but it is answered in this way: The simple fact that the tank was removed by the flood from its original location, before the fire, will not relieve the defendant company from liability;

*Charge of Court below.*

but, if the tank was so far wrecked before the fire as to lose its integrity as an oil tank, and its being so wrecked was the proximate cause of the loss of the plaintiff's oil, and the fire was only the remote cause, then the defendant would be relieved of liability.

5. By the terms of the policy, the insurance company contracted to indemnify the plaintiff against loss by fire " on oil while contained in the iron crude-oil tank known as No. 1, on plan situate, detached 273 feet, on the Johnson farm at Johnson's station." The defendant did not contract to pay for oil which might be lost at any other place than that particularly mentioned in the policy; and the undisputed evidence showing that the oil was destroyed in a different location, the defendant is not liable under the terms of the contract.

Answer: Refused.[5]

6. The question involved in this case is simply one of contract between the parties; and the tank known as No. 1, which contained the oil covered by the insurance, having been carried away by the flood to a point different, and at a considerable distance from the location described in the policy, the jury cannot consider whether the insurance company would or would not have insured the oil in the place where the tank was left by the flood. By the contract, the defendant only agreed to pay for oil destroyed by fire while contained in the tank as located at the time the policy was issued, and its liability ceased when the oil insured was carried away from that place.

Answer: Refused.[6]

7. The plaintiff's evidence having disclosed the fact that at the time this contract was made, and at the time the loss was incurred, the oil insured was the property of various producers, patrons of the plaintiff company, held on storage by said company, and that the plaintiff was not the " entire, unconditional and sole owner " of said oil covered by the policy of the defendant, which facts were not stated in the policy, therefore, under the terms of the contract in this case (see § 4, of said policy), the plaintiff cannot recover, and the verdict of the jury should be for the defendant.

Answer: Refused. The written part of this policy shows that it was made with the Western & Atlantic Pipe Lines, on oil while contained in the iron crude-oil tank known as No. 1,

on the plan situate, on the Johnson farm; and as they were a chartered company with certain rights, among which was the transportation and storage of oil, the insurance company were bound to know that the oil on which the insurance was placed was oil held by this defendant company under its charter rights; and § 4, referred to, we think has no application in this insurance, but was put in the original blank that it might be applied to insurance on other kinds of personal property, and on real estate.[7]

8. The plaintiff's evidence having failed to show what part of the contents of said tank was oil, the jury would have no competent evidence upon which to compute amount of loss; therefore, they should find for the defendant.

Answer : Refused.

9. Under all the evidence in this case, the verdict should be in favor of the defendant.

Answer: Refused.  We leave it to the jury to determine the questions of fact that have been submitted to them, under our instructions as to the law.[8]

—The jury having retired to consider of their verdict, returned into court with the following question :

" Judge McIlvaine:

" How long shall we calculate interest on the principal; from August 22d, or have the company sixty days to adjust the claim ?                          J. N. Smiley, Sec'y."

Answer: Gentlemen of the jury: We have received your question; and we instruct you that, as the defendant company have denied their liability, the plaintiff would be entitled to interest on whatever amount you may find the plaintiff entitled to recover, from the date of the fire.[9]

—The jury returned a verdict for the plaintiff for $1,274.96. Judgment having been entered, the defendant took this appeal, assigning for error :

1–3. The admission of the plaintiff's offers.[1 to 3]

4. The portion of the charge embraced in [ ][4]

5–8. The answers to the defendant's points.[5 to 8]

9. The instructions upon the subject of interest.[9]

*Mr. J. H. Murdoch* (with him *Mr. W. S. Parker*), for the appellant.

Arguments.

As to the first, second and third assignments, counsel urged that, as the defendant had not attempted in any way to show that the plaintiff had no insurable interest in the oil destroyed, the offers admitted were inadmissible; that the sole question raised by the cross-examination was whether the policy was not void by its own terms and conditions. That the destruction of the oil by fire, under the circumstances and in the place disclosed by the evidence, was not a loss for which the defendant company had contracted to indemnify the plaintiff, fourth, fifth and sixth assignments, counsel cited: Harris v. Insurance Co., 53 Ia. 236; Wood v. Insurance Co., 13 Conn. 533 (35 Am. Dec. 92); McClure v. Insurance Co., 43 Ia. 350; Lyons v. Insurance Co., 14 R. I. 109 (51 Am. Rep. 364); Severance v. Insurance Co., 5 Biss. 156; 1 Wood on Fire Ins., 114; Haws v. Fire Ass'n, 114 Pa. 434; Brice v. Insurance Co., 55 N. Y. 240; Pearsons v. Insurance Co., L. R. 1 App. C. 496; Annapolis etc. R. Co. v. Insurance Co., 32 Md. 40 (3 Am. Rep. 112); Lycoming Co. Ins. Co. v. Updegraff, 40 Pa. 311; Maryland F. Ins. Co. v. Gusdorf, 43 Md. 506; Marshall on Ins., 249, 251; Porter on Ins., 106; West Br. Ins. Co. v. Helfenstein, 40 Pa. 296. That the interest of the assured was not stated upon the face of the policy, and therefore the first condition of the policy was violated, seventh assignment: Grandin v. Insurance Co., 107 Pa. 26; State Mut. F. Ins. Co. v. Arthur, 30 Pa. 331, 333.

*Mr. T. F. Birch* (with him *Mr. J. W. Donnan* and *Mr. A. Donnan*), for the appellee.

Upon the first ground of defence, that the tank had been removed from its location, counsel cited: Wood on Insurance, 146; DeGraff v. Insurance Co., 38 Minn. 501 (8 Am. St. Rep. 686); Lycoming Ins. Co. v. Mitchell, 48 Pa. 367; 1 Wood on F. Ins., 444–446; Everett v. Insurance Co., 21 Minn. 76; Sillem v. Thornton, 3 El. & Bl. 868; May on Ins., 282; Natchez Ins. Co. v. Stanton, 2 Sm. & M. 340 (41 Am. Dec. 596); Park on Ins., 299, 302; Bond v. The Cora, 2 Wash. C. C. R. 80; Winthrop v. Insurance Co., 2 Wash. C. C. R. 7; Scott v. Thompson, 1 Bos. & P., N. S., 181: Delaney v. Stoddart, 1 Term R. 22; Winter v. Insurance Co., 30 Pa. 338; Snowden v. Insurance Co., 3 Binn. 457. (2) Upon the second ground

of defence, that the oil destroyed was not the property of the plaintiff: Berryman's Dig., 218; Brink v. Insurance Co., 80 N. Y. 108; Castner v. Insurance Co., 50 Mich. 273; Vos v. Robinson, 9 Johns. 192; Citizens' Ins. Co. v. McLaughlin, 53 Pa. 487; Phila. Tool Co. v. Assurance Co., 132 Pa. 236; Waring v. Insurance Co., 45 N. Y. 606 (6 Am. Rep. 146); Siter v. Moors, 13 Pa. 218. (3) Upon the question of interest: Nevins v. Insurance Co., 5 Fost. (N. H.) 22; Ætna Ins. Co. v. Maguire, 51 Ill. 342; Phillips v. Insurance Co., 14 Mo. 220; Indiana Ins. Co. v. Routledge, 7 Ind. 25; Lebanon Ins. Co. v. Erb, 112 Pa. 149.

OPINION, MR. JUSTICE STERRETT:

This action is on a policy of insurance issued by the Home Insurance Company, defendant, insuring the Western & Atlantic Pipe Lines, for one year from June 28, 1888, against loss or damage by fire to the amount of two thousand five hundred dollars, "on oil while contained in the iron crude-oil tank known as No. 1, on plan situate, detached 273 feet, on the Johnson farm, at Johnson's station, on the line of the Washington branch of the Pittsburgh, Cincinnati & St. Louis railroad, on leased ground, Washington county, Pa." By necessary implication, the verdict establishes the fact that, during the life of the policy, over three thousand six hundred barrels of oil were destroyed by fire, while in said "iron crude-oil tank known as No. 1," on the plan of oil tanks at Johnson's station. The jury found in favor of the plaintiff for the value of the oil thus destroyed.

The company defendant, after being fully advised as to the loss, etc., denied its liability on two grounds:

1. Because the tank containing the oil insured had been removed "by an unforeseen disaster, in the shape of a flood," and carried about four or five hundred feet from the position it occupied when the policy was issued.

2. Because the oil contained in said tank did not belong to the plaintiff company, but to its customers for whom it was held in storage, which fact was not stated on the face of the policy.

Conceding the fact that, at the time of the fire, the tank had been removed by a flood about four or five hundred feet from

the position in which it stood when the oil was insured, but not off the premises described in the policy, the plaintiff contends that the insurance company was not thereby relieved from liability for the loss. In that we think it is right.

The object of the contract was indemnity against the destruction of oil described as "contained in the iron crude-oil tank known as No. 1," etc. With the view of attaining that object, the terms of the policy should be construed liberally. If any doubt exists as to their meaning, it should be resolved in favor of the insured, rather than in the interest of the underwriter. When words employed in a policy of insurance are susceptible of two interpretations, that which will sustain the claim of the insured should be adopted : Wood on Ins., 145 ; May on Ins., 182. Tested by these well-recognized principles of interpretation, the position contended for by the defendant company is untenable. In substance, its position is that the above-quoted description of the property insured is, in effect, a warranty that in case of fire, the oil destroyed shall not only be contained in said iron tank, but that the tank itself shall remain where it was when the insurance was effected ; otherwise the insurance company will not be liable. Authorities cited in support of that position, where property insured as contained in certain barns, houses, etc., was destroyed after removal to other buildings, have no application to the case before us. In those cases, there was necessarily a failure to show that the insured property was in the designated buildings when destroyed. In this case, the jury must have found that the oil insured was destroyed " while contained in the iron crude-oil tank known as No. 1 " on the plan of tanks at Johnson's station, and that, we think, fully satisfies the terms of the contract. The parties were not contracting with reference to an insurance upon the tank, but only upon the oil contained in it. With that construction of the company in view, the learned president of the Common Pleas rightly instructed the jury as follows: " If you conclude that this tank was picked up bodily by the flood, and floated down the stream, and lodged from three to five hundred feet away from the place where it was constructed, against the abutments of the bridge, and remained intact, and in that way held the oil, as an oil tank would hold oil, so that it could have been recovered by the

company, and while there, in place of on the original founda-
tion, the oil in the tank was burned, then the contract of in-
demnity would be binding, and the defendant would be liable
for such loss as the plaintiff might sustain by reason of the fire
on their proportionate share of the loss." The jury, under this
instruction, having found for the plaintiff and assessed its
damages, the necessary implication is that they found the facts
of which the instruction is predicated to be true; that the oil
tank No. 1 contained and held the oil, for the value of which
they assessed damages in favor of the plaintiff, until it was de-
stroyed by fire, etc.

But assuming, merely for argument's sake, that the descrip-
tion of the tank's location may be regarded as in the nature of
a warranty, it can only be construed as a warranty of location
at the time the insurance was effected, and not that the tank
would thereafter remain in the same location: Lycoming Ins.
Co. v. Mitchell, 48 Pa. 367. As a statement of then existing
facts, it is not even pretended that the description of the loca-
tion of the tank, etc., was not strictly true. If it was intended
to make the continued location of the tank, at the precise point
where it then was, a condition of the underwriter's liability, it
would have been an easy matter to have said so. It is not the
province of courts to indulge in conjectures favorable to such
insurance companies as are disposed, upon mere technicalities,
to avoid the payment of honest claims. Cases are not unfre-
quent in which statements in regard to the use and character of
buildings, etc., are construed as merely descriptive of the risk
at the time the application is made, and not as a warranty that
there shall be no change during the life of the policy: Wood
on Ins., §§ 444, 446 and cases there cited. In Everett v. Insur-
ance Co., 21 Minn. 76, a threshing machine was insured as
"stored in a certain barn on section 36," etc., and it was held
that this was a mere matter of description, operating to identify
the property; and not a promissory stipulation on the part of
the insured, nor a condition on the part of the insurer. But,
giving the defendant the benefit of the broadest construction,
the language used in describing the location of the oil insured
cannot amount to anything more than an implied warranty of
the plaintiff company that it will not voluntarily change its lo-
cation. This construction appears to have been recognized in.

Sillem v. Thornton, 3 El. & Bl. 868, and was perhaps warranted by the facts of that case.   Even in that view, we have, on the one hand, only an implied warranty that the insured will not voluntarily change the location of the tank containing the oil, and, on the other, defendant's admission, in its affidavit of defence, that the location of the tank was changed "by a visitation of Providence."

Another ground of defence is that the oil in question did not belong to plaintiff, but to its customers, for whom it was held in storage.   For some reason, best known, perhaps, to the party who, on behalf of the defendant, wrote the sympathetic letter of October 11, 1888, and made the affidavit of defence April 16, 1889, this ground of defence was not even hinted at in either of those papers, and for aught that appears was a mere afterthought.   In the letter he says: "We regret exceedingly the loss sustained by your company, and would be pleased to reimburse you if we could see wherein you had any claim upon us, either in law or equity.   We insured oil in an iron tank located in a safe position, upon a good foundation, and charged you a premium which we considered adequate, in view of its position; but an unforeseen disaster, in the shape of a flood, carried the tank from its position to a more dangerous one, whereby it was destroyed."   In the affidavit substantially the same defence, viz., removal of the tank "by a visitation of Providence," etc., is solely relied on.   It is not even pretended that there was any fraudulent concealment of ownership of the property, or that any untruthful representation was made, upon the faith of which the policy was issued; nor is it claimed that the defendant company was not fully aware of the exact situation and ownership of the oil when it accepted the risk.   It had notice, by the proof of loss furnished by plaintiff, as to the manner in which the oil was held, but no objection on that ground was interposed or even intimated.   Defendant's liability was denied solely on the ground that the tank containing the oil had been removed "by a visitation of Providence."

The supplemental defence, afterwards sprung upon the plaintiff, that it was not the owner of the oil, might well be disposed of by saying it came too late : Brink v. Insurance Co., 80 N. Y. 108 ; Castner v. Insurance Co., 50 Mich. 273 ; Vos v. Robinson, 9 Johns. 192 ; Stayton v. Graham, 139 Pa. 1.   In Brink v.

Insurance Co., supra, the company denied liability on the ground of fraud, and so declared to the assured. After suit brought, it raised the question as to time of the filing proofs of loss, etc. In denying its right to do so, Chief Justice CHURCH said : " I think it was estopped from so doing. The plaintiffs' claim was challenged for fraud, and fraud only. They acted upon it, and brought an action incurring large expenses in its prosecution ; non constat, if the failure to file the proofs in time had been insisted on, but that the plaintiffs would have acquiesced and refrained from prosecuting, and thus they might be injured by the change of ground on the part of the defendant. Every consideration of public policy demands that insurance companies should be required to deal with their customers with entire frankness. They may refuse to pay without specifying any ground, and insist upon any available ground ; but, if they plant themselves upon a specified defence, and so notify the assured, they should not be permitted to retract after the latter has acted upon their position as announced, and incurred expenses in consequence of it."

But, aside from what has been said in answer to the, last-mentioned ground of defence, we think it is also successfully met by the facts connected with the contract of insurance, etc. The plaintiff is a corporation chartered under the law of April 29, 1874, and supplements, and invested with the right to transport, store, insure, and ship petroleum, and under our constitution is prohibited from engaging in any other business than that specified in its charter. It should be presumed that the insurance company was cognizant of these facts, and contracted with reference to them ; but, whether it was or not, it is certainly chargeable with knowledge of the usual and customary methods of conducting the business pertaining to property which it insured : Citizens' Ins. Co. v. McLaughlin, 53 Pa. 487. While, in one sense, the plaintiff was not the owner of the oil, yet, in so far as risk from loss by fire was concerned, it may, to all intents and purposes, be considered as the owner. According to the contract made with its customers, it was bound to protect, by insurance, the oil in its tanks at its own expense. In case of destruction by fire without insurance, it would have been bound to its customers to make good the loss. To the extent of the value of the oil, therefore, it certainly had

Opinion of the Court.

an insurable interest, and, in a certain sense, was at least quasi owner of the oil. The policy in suit issued without any application or written request describing the interest of the insured in the oil, and it does not appear that any actual representation of any kind was made by the insured. In view of these circumstances, the language of our Brother WILLIAMS in Philadelphia Tool Co. v. Assurance Co., 132 Pa. 236, is especially applicable. He there said : " We ought to assume that a policy written under such circumstances was written upon the knowledge of the representative of the insurer, and intended to cover in good faith the interest which the insured had in the buildings. Fraud is never to be presumed, and in this case no fraudulent representation is shown or alleged, unless it can be deduced from the statements of the insurer, made, as we must presume, on the knowledge of its representative, and for which the insured is in no manner responsible. We must also remember that this policy is to be interpreted most strongly against the company whose contract it is. Applying these principles to the question now raised, we conclude that the policy written on the knowledge of the insurer was made in view of the facts of the case, and was intended to cover such interest as the insured had." So, in the case before us, the defendant having insured the oil contained in tank No. 1, without any representation as to the quantum of plaintiff's interest therein, must be considered as having insured it against any loss which the plaintiff would suffer by fire. As already observed, the plaintiff had a right, and was bound by its contract with its customers, to protect the oil by insurance, so that its value could be accounted for to them in case of loss by fire. As was said in Waring v. Insurance Co., 45 N. Y. 606 : " Agents, commission merchants, or others, having the custody of and being responsible for property, may insure in their own names, and they may, in their own names, recover from the insurer, not only a sum equal to their own interest in the property by reason of any lien for advances or charges, but the full amount named in the policy, up to the value of the property." To the same effect is Story on Agency, 126.

The testimony referred to in the first, second, and third specifications was rightly admitted. It tended to prove plaintiff's interest in the oil, and consequent right to insure.

Statement of Facts.

The only other specification that requires further notice is the ninth, in relation to interest. A sufficient answer to that is, the company denied in toto its liability, and was therefore not entitled to the benefit of the provision in the policy giving sixty days for adjustment and payment of loss: Nevins v. Insurance Co., 5 Fost. (N. H.) 22; Ætna Ins. Co. v. Maguire, 51 Ill. 342; Phillips v. Insurance Co., 14 Mo. 220; Indiana Ins. Co. v. Routledge, 7 Ind. 25; Myer's Fed. Dec., p. 535. In Ætna Ins. Co. v. Maguire, supra, it was held that such a clause applies only where the insurance company agrees to pay, or is undecided in regard to paying, but not when it peremptorily refuses to pay the loss. Further notice of the specifications is unnecessary. There is no merit in either of them.

Judgment affirmed.

Mr. Justice GREEN and Mr. Justice MITCHELL noted their dissent.