JOHN CONLON COAL CO. v. WEST-
CHESTER FIRE INS. CO. OF
NEW YORK.

No. 3420.

District Court, M. D. Pennsylvania.

Sept. 1, 1936.

(1) The property was unoccupied for a greater period of time than allowed by the policy contract.

(2) The plaintiff had failed to comply with the terms and conditions of the policy and furnish a proof of loss in writing within 60 days.

(3) The contract was void as against public policy, because, at the time of the issuance of the policy, Paul J. Conlon, the writing agent, was likewise a director and stockholder of the plaintiff company.

(4) There was no proper evidence of the extent of the damage to the colliery by the fire, by reason of the fact that the expert called by the plaintiff predicated his testimony upon an examination of the colliery made two years before the fire occurred, and, when the defendant endeavored to cross-examine one of the officers of the plaintiff company on the capital stock reports made by the John Conlon Coal Company to the commonwealth of Pennsylvania, wherein certain values were set forth with reference to buildings and land owned by the John Conlon Coal Company, in order to endeavor to elicit from that officer the value at which this particular colliery was carried upon the books of the company, the court refused to permit the defendant to do so.

(5) The plaintiff was entitled to interest only from the date of the verdict, for the reason that damages recovered under a contract of insurance are in their nature unliquidated.

I shall discuss the questions raised by these reasons in the order mentioned above.

Leo W. White and Kenneth J. English, both of Pittston, Pa., for plaintiff.

Bedford, Jones, McGuigan & Waller, of Wilkes-Barre, Pa., and H. M. Schell, of Philadelphia, Pa., for defendant.

WATSON, District Judge.

The Westchester Fire Insurance Company of New York, the defendant, issued a policy of fire insurance for $10,000 to the John Conlon Coal Company, the plaintiff, insuring a certain coal breaker, building, machinery, etc., belonging to the plaintiff located at Hudson, Luzerne county, Pa. The property was destroyed by fire on July 11, 1932, but defendant refused to pay any part of the loss; hence this suit.

At the trial, a verdict was directed for the plaintiff in the sum of $11,254.67, being $9,200, with interest from July 11, 1932. The defendant filed a motion for a new trial. A rule to show cause was granted, which rule is now before the court for disposition.

The contention of the defendant is that the court erred in directing a verdict for the plaintiff for the following reasons:

The policy provides, inter alia, as follows: "Unless otherwise provided by agreement in writing added hereto, this company shall not be liable for loss or damage occurring—(f) while a described building whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of ten days. * * *" An agreement in typewriting attached to the policy contains inter alia the following provisions: "Privileges Granted.— * * * to remain vacant not exceeding thirty (30) days in any one policy year after the period permitted for vacancy in the policy contract; to stand idle as occasion may require."

It has been held that a dwelling house is unoccupied when there is not habitually the presence of human beings, but it cannot be held that a breaker is in-

tended to be lived or dwelt in. In determining what the contract means, the circumstances surrounding the making of and affecting the subject-matter to which it relates should be taken into consideration. The word unoccupied should be construed with reference to the nature and character of the building, the purposes for which it was designed, and the uses contemplated by the parties. It cannot be contended that a church is unoccupied because services are held therein only on Sunday, or that a school is unoccupied because school sessions are not held therein during school vacation. The uncontradicted evidence was that the breaker contained intact all the machinery and equipment necessary for its operation, was kept prepared at all times for immediate use; that there was a watchman in the breaker every day and every night; that the breaker was visited several times each day by the plaintiff's manager and other employees. It is common knowledge in the anthracite regions that breakers are shut down for long periods of time because of lack of orders for anthracite coal.

█ It could not be found from the evidence that the breaker was abandoned, but it could be found from the uncontradicted evidence that it was being used for the practical purpose of keeping the machinery in proper condition for immediate use for the preparation of coal when market conditions warranted the operation of the breaker. It has been held that, in order to show occupancy of a building used for manufacturing purposes, it is sufficient to show some practical use of the property. Halpin v. Phenix Insurance Company, 118 N.Y. 165, 23 N.E. 482. The defendant contends that a proper interpretation of the policy is that the breaker, in order to be occupied, should of necessity be operated, and that when it was not operated, that is, when it was idle, it was unoccupied. It is apparent that this is not a proper interpretation when we consider the provisions of the policy permitting the insured premises to stand idle without limit as to time. The interpretation contended for by the defendant is repugnant to and in conflict with the expressed permission for idleness. My conclusion is, that there was evidence in the case from which it could be found that the breaker was occupied at all times between the date of the policy and the fire. John Conlon Coal Company v. Rochester American Insurance Company of New York (D.C.) 16 F.Supp. 91.

█ The uncontradicted evidence shows that the breaker was completely destroyed by the fire. Under such circumstances, it is well settled that it is not necessary in order to recover to furnish a proof of loss in writing. Cara v. Newark Fire Insurance Co., 312 Pa. 489, 167 A. 356. There was evidence of a denial of liability by the company within 60 days after the fire, and there was evidence that a detailed statement of the loss had been furnished defendant's adjuster; and there was also evidence of other facts which made the question as to whether proofs of loss were waived a question for the jury to decide. Globe & Rutgers Fire Insurance Co. v. Stallard (C.C.A.) 68 F.(2d) 237.

█ The policy was countersigned and delivered to the John Conlon Coal Company by Paul J. Conlon, writing agent of the defendant company, who, at the same time, was a director and stockholder of the John Conlon Coal Company. The defendant contends that, for this reason, the contract was void as against public policy, and that notice to the defendant company of such dual agency would be ineffective in law unless there was an acknowledgment of such a notice by a rider attached to the policy. Paul J. Conlon's relation to the John Conlon Coal Company was not concealed from G. F. Haertrich, special agent of the defendant. On the contrary, Paul J. Conlon fully explained his connection with and relation to the John Conlon Coal Company in his negotiations with G. F. Haertrich, which resulted in Paul J. Conlon's consent to become an agent of the defendant. At the time of the negotiations between Paul J. Conlon and G. F. Haertrich, and at various times during seven years which followed, G. F. Haertrich urged Paul J. Conlon to favor the defendant with a share of the insurance upon the property of the John Conlon Coal Company. Of course, on the principle that "no man can serve two masters," an agent cannot act as such for both parties to a transaction, where the skill and judgment which he should exercise for the one might conflict with the skill and judgment which he should exercise for the other. But this rule has no application where the duties of the agent to the two principals are of such a nature that there can be no conflict between his duty or loyalty to the one and his duty or

loyalty to the other. Rossi v. Firemen's Insurance Company, 310 Pa. 242, 165 A. 16. In the situation, as presented by the facts in this case, it cannot successfully be contended that there was any conflict between Paul J. Conlon's duty to the plaintiff and his duty to the defendant. The fact that an agent has acted for both parties in the making of a contract cannot have the effect of invalidating the agreement so made, when both principals, with full knowledge of the material facts, consented to the double agency. Such consent clearly appears in the evidence in this case. It was clearly shown by the course of the dealings between Paul J. Conlon and G. F. Haertrich over a period of seven years, and certainly was sufficient to support a finding to that effect. The testimony of Paul J. Conlon, the agent, relating to the agreement with Haertrich, the special agent of the defendant company, does not appear to have been directly contradicted.

I am of opinion that the defendant company has ratified the agreement which it now objects to. Haertrich entered into an agreement with Paul J. Conlon. The defendant company had knowledge of it, and acquiesced in it. It cannot at this time successfully dispute its liability on the policy in question. The evidence was sufficient to support a finding that the company had knowledge of, consented to, and ratified the act of Paul J. Conlon in insuring property in which he was financially interested.

Where the value of the property injured or destroyed is in issue, any competent evidence either direct or circumstantial is admissible, which tends to show such value. 26 Corpus Juris, 535. But evidence is not admissible as to the condition or value of the property at a remote period unless it is shown to be the same as at the time of the fire. 26 Corpus Juris, 536.

The testimony as to damages consisted of the testimony of Edward P. Reilly, plaintiff's witness, who had been a breaker builder for 38 years. He testified that he visited the property covered by the policy about two years before the fire; that he made a sketch of the breaker and its contents; and as to the values of the breaker and its contents as of the time he made the sketch. Wm. R. Conlon, the general manager and a director of the John Conlon Coal Company, testified that there had been no change in the condition of the breaker building and contents from the time Edward P. Reilly made the inspection and the sketch of the breaker and its contents up to the time of the fire; and that the machinery in the breaker had been kept greased and in readiness to operate.

In my opinion, the plaintiff properly proved the damages sustained. The evidence of value of the property destroyed was not too indefinite or too remote from the date of the fire.

The court did not err in refusing to allow the defendant to introduce in evidence the 1931 corporate tax return of the plaintiff, or in refusing to allow Wm. R. Conlon, general manager and a director of the plaintiff company to testify as to what proportion of the value stated in the tax return the plaintiff put upon the destroyed property. Wm. R. Conlon had been called by the defendant as for cross-examination. The tax return was not signed by the witness, Wm. R. Conlon, nor was he preliminarily qualified by counsel as having knowledge of the method of the compiling of this report or of the values of the assets set forth therein. Such knowledge on the part of the witness was not shown, and his testimony with reference to the return was, therefore, incompetent. Furthermore, the report contained no valuation which could be identified as applicable to this coal breaker and contents destroyed by the fire, and, accordingly, had no value as evidence. The return showed a bulk item of mining buildings, and a bulk item of mining equipment, and the evidence showed that the plaintiff company owned two other coal properties, upon at least one of which there was a coal breaker, other mining buildings, and other mining equipment in addition to the breaker and equipment covered by the policy in suit.

It is the general rule that interest is not allowed on unliquidated damages. There are cases, however, in which it has been held that interest is allowable on unliquidated damages in cases where by mere computation the amount due and the time when it should have been paid can be determined, as in this case. Dowagiac Mfg. Co. v. Deere & Webber Co. (C.C.A.) 284 F. 331. Interest may be allowed from the date of the loss, where there is no provision in the policy extending or otherwise fixing the time for payment, or where,

although where there is such a provision, it has been waived by insurer. 26 Corpus Juris, 576. Western & A. Pipe Lines v. Home Ins. Co., 145 Pa. 346, 22 A. 665, 27 Am.St.Rep. 703. The insurance company denied in toto its liability for the loss of the breaker and property destroyed. It was, therefore, not entitled to the benefit of the provision in the policy giving 60 days for the adjustment and payment of the loss. The plaintiff had the right to recover interest from the defendant from the date of the fire.

When the evidence was all in and both sides had rested, each party moved for a directed verdict.

"When each party asks the court to instruct a verdict in his favor, it is equivalent to a request for a finding of facts, and if the court directs the jury to find a verdict for one of them, both are concluded on the finding of 'facts." Beuttell v. Magone, 157 U.S. 154, 15 S.Ct. 566, 39 L.Ed. 654.

I have considered the testimony in the case and the rulings complained of, and I am satisfied that the court committed no prejudicial error.

The direction of a verdict for the plaintiff was proper, and a new trial should be refused.

Now, September 1, 1936, the rule to show cause why a new trial should not be granted is discharged, and a new trial is refused. Judgment is directed to be entered on the verdict.