### Hoffman et al. *v.* Neshannock Mutual Fire Insurance Co., Appellant.

14

Argued April 28, 1944. Before Keller, P. J., Baldrige, Hirt, Kenworthey, Reno and James, JJ. (Rhodes, J., absent).

*T. C. Cochran*, with him *Osmer & Osmer*, for appellant.

*Forest B. Irwin*, for appellees.

Opinion by Hirt, J., September 27, 1944:

The judgment for plaintiffs on the verdict in this case is based on the conclusion that defendant, a mutual insurance company, waived strict compliance with the terms of its fire insurance contract and was barred from contesting payment by estoppel. Defendant questions the refusal of judgment n. o. v. in its favor.

Federal Land Bank of Baltimore, as owner, agreed in writing on November 25, 1938, with Cecil C. Hoffman and Alma E., his wife, to sell a farm to them upon

specified terms. The same day, for the protection of the parties, defendant issued its policy in their names as owners, with a loss clause for the protection of the bank, insuring the dwelling house with its contents and the barn against loss by fire in the total sum of $1,000. Some time thereafter Ira W. Hoffman acquired an interest in the property from Cecil C. Hoffman and wife. The bank on October 9, 1939, conveyed the land in fee to plaintiffs—an undivided one-half interest therein to Ira W. Hoffman and a like interest to Cecil C. Hoffman and wife. Fire destroyed the buildings and contents on April 18, 1940. Defendant refused to pay the loss. On the trial the jury found for plaintiffs in the sum of $1,000, the full amount of the policy. When Ira bought an interest in the land, plaintiffs believed that the policy continued to protect them against fire loss although no change of ownership was noted on the policy by assignment or otherwise. Appellant contends that the policy had lapsed, and in addition relies on a by-law of defendant mutual company—a part of the insurance contract—to this effect: "Policies can only be assigned in case of the sale of the property insured, with the consent of the Secretary first endorsed thereon and noted on his records of assignments", and the following provision of the policy: "This entire policy shall be void, unless otherwise provided by agreement in writing added thereto—(a) if the interest of the insured be other than unconditional and sole ownership; ...... or (d) if any change other than by the death of an insured take place in the interest, title or possession of the subject of insurance ......; or (e) if this policy be assigned before a loss."

On August 7, 1939, defendant insurer had levied an assessment of $2.85 on the policy in the names of Cecil C. Hoffman and wife, as the insured, payable January 31, 1940, as "the final date [according to the notice] on which assessments can be paid to prevent voidance of insurance." This assessment remained unpaid

on February 1, 1940, and the policy by its terms then became suspended automatically. F. A. Eakin was the agent and representative of defendant in the district. He solicited the insurance and his name appears on the policy as defendant's agent. When Ira W. Hoffman on March 12, 1940 learned of the unpaid assessment against the policy he talked with Eakin. Ira testified: "I called Mr. Eakin on the phone and asked him what I should do—whether I should take out a new policy, or get an endorsement for the present policy —and he told me it wasn't necessary to take out a new policy, that all I needed to do was to notify the company of the change of ownership." The notice of the assessment directed payment to F. F. Yarian, Treasurer of defendant company, with an addition of 10% as a penalty, if not paid when due. This assessment with the penalty was paid to Yarian by Ira on March 25, 1940; the payment was accepted and Yarian's receipt as treasurer was delivered to Ira the following day. With the remittance to Yarian, Ira enclosed a letter addressed to defendant (in accordance with his talk with Eakin) notifying the company that he had bought a one-half interest in the land and, giving a reference to the recorded deed, requested "an endorsement for the policy" reflecting the change in ownership. After the fire, less than a month later, defendant disclaimed liability because in paying the past due assessment Ira had not notified defendant's *secretary* that he wanted the policy reinstated in accordance with a by-law of the company. More emphasis was put on the lack of a written assignment of an interest in the policy to Ira, consented to by the company, as a reason for refusing payment. On the trial, defendant offered no testimony. Plaintiffs' testimony therefore not only must be accepted as true but plaintiffs must be given the benefit of every reasonable inference supporting recovery.

A policy holder in a mutal company may not avoid liability for payment of a valid assessment against him

merely by allowing the policy to lapse. Liability for the assessment continues though the insurance is suspended. The by-laws of a mutual association or company commonly impose penalties for the non-payment of assessments when due. But the purpose of such penalty is not to induce voluntary payment of a past obligation by one who has voluntarily withdrawn as a member. Such penalty generally is in the nature of a fee for reinstatement. And the payment and acceptance of the assessment with a 10% penalty, in this case, is some evidence in itself of an automatic reinstatement of the policy. The by-law quoted in the assessment notice implies such reinstatement by providing that upon non-payment of an assessment when due, the policy "shall be suspended *until* such delinquent assessment and the ten percentum has been paid in full." (Italics added.) The language immediately following in the by-law relating to notice to the *secretary* that the insured desires reinstatement of the policy, is at least equivocal. Yarian was an officer of the company and Ira's letter addressed to the company together with the accompanying remittance of the amount of the assessment constituted a request to reinstate the policy as well as to note a change in the names of the insured on the company's records. By accepting payment under the circumstances the company must be regarded as having waived the formality of a written request for reinstatement addressed to its secretary even if that was required under the by-laws. There remains the question whether defendant is liable because of a change in ownership without the company's endorsement on the policy consenting to the change. If insured are not the sole owners of the property there can be no recovery unless this provision of the policy is waived. *Isaac et al. v. D. and C. Mut. F. Ins. Co.,* 308 Pa. 439, 162 A. 300.

It was natural for Ira to look to his neighbor Eakin, the resident agent through whom the insurance was ob-

tained, for advice in relation to the policy and it will be noted that Ira relied on Eakin's statement that notice to the company of the change in ownership was all that was required. The authority of Eakin however was not as broad as that of the agent in *Arlotte et al. v. Nat. Liberty Ins. Co.*, 312 Pa. 442, 167 A. 295, and that case is not controlling here. We agree that defendant was not bound by any representations of Eakin, a mere soliciting agent. But when plaintiffs received no response to Ira's request, addressed to the company and received by one of its officers, they were justified in assuming that nothing further was required and that the policy protected all of them. The company's acquiescence in the act of its treasurer in accepting payment of the assessment (from Ira, a stranger to the written policy who was under no legal obligation to pay) coupled with Ira's request for "an endorsement for the policy" to reflect the change in ownership, constituted a waiver of the stipulation in the policy that change in ownership can be effected only by written assignment on the policy consented to by the insurer, even though the policy contained a stipulation that there should be no waiver except by writing endorsed on the policy. *Thomas v. Employers L. Assur. Corp.*, 284 Pa. 129, 130 A. 322. "That an insurance company may waive a condition in a policy by parol, although it contains a stipulation that there shall be no waiver of conditions except upon express agreement endorsed on the policy, must now be accepted as the law of Pennsylvania": *Evans v. Metropolitan Life Ins. Co.*, 294 Pa. 406, 144 A. 294. The payment of the assessment in this case continued the policy until the next assessment. No other assessment was levied before the date of the fire. Acceptance of payment of the assessment therefore, with knowledge of a change in ownership—a fact avoiding the policy—estopped the company from asserting avoidance on that ground after the loss occurred.

*Central Market St. Co. v. Ins. Co.*, 245 Pa. 272, **91 A.**
**662.** In principle the present case has something in
common with *Spry v. The F. U. M. F. Ins. Co. of Pa.,*
101 Pa. Superior Ct. 49.
Judgment affirmed.