JONES v. PROTECTION MUT. FIRE INS. CO. OF CAMBRIA COUNTY.

JONES v. COMMONWEALTH MUT. FIRE INS. CO. OF PENNSYLVANIA.

Civ. Nos. 9325, 9327.

United States District Court
E. D. Pennsylvania.

Oct. 16, 1950.

Owen B. Rhoads, Philadelphia, Pa., for plaintiff, Paul Jones, Jr.

Kolander & Saltzburg, Philadelphia, Pa., for defendant, Protection Mut. Fire Ins. Co. of Cambria County.

J. Webster Jones, Philadelphia, Pa., for defendant, Commonwealth Mut. Fire Ins. Co. of Pennsylvania.

FOLLMER, District Judge.

These are actions on policies of fire insurance. The cases were tried together before the Court and without a jury. On the basis of the pleadings and the evidence produced at the trial, I make the following

### Findings of Fact.

1. The plaintiff is a citizen of the State of Missouri.

2. Both defendants are Pennsylvania corporations and have their principal places of business in Pennsylvania.

3. Both defendants were authorized to do business in Pennsylvania only.

4. Commonwealth Mutual Fire Insurance Company of Pennsylvania (hereafter referred to as "Commonwealth") issued its policy No. A 53624, effective April 24, 1947, countersigned by Charles T. Easterby, Agent, in an amount not exceeding $12,000, being pro rata of a total coverage of $17,000, covering property described as a one story approved roof frame building, occupied by Sikeston Tent and Awning Company, and located "South of Highway No. 61, on part of U. S. Private Survey No. 1062, Township 24, Range 14, New Madrid County, Missouri, Just (sic) Highway from City Limits of Sikeston, Missouri."

5. Protection Mutual Fire Insurance Company of Cambria County (hereafter referred to as "Protection") issued its policy No. F. 12192, effective April 24,

1947, countersigned by Charles T. Easterby, Agent, in an amount not exceeding $5,000, being pro rata of a total coverage of $17,000, covering property described as a one story approved roof frame building, occupied by Sikeston Tent and Awning Company, and located "South of Highway No. 61, on part of U. S. Private Survey No. 1062, Township 24, Range 14, New Madrid County, Missouri Just (sic) Highway from City Limits of Sikeston, Missouri."

6. Protection's policy also carried the following endorsement, dated May 12, 1947,

"In consideration of the rate at which this policy is written, it is understood and agreed that this policy shall be a contributing excess policy.

"It is warranted that at all times there will be carried $5,000.00 primary insurance which shall be exhausted before liability commences under this contract.

"In the event of a loss exceeding $5,000.-00, then this policy shall be pro rata contributing insurance with all other insurance in force for such portion of the loss as is in excess of $5,000.00."

7. Both policies were issued to Sikeston Tent and Awning Company.

8. On May 26, 1947, by endorsements attached to each policy, both signed by Charles T. Easterby, Agent, it was agreed and understood that the policies were amended to show the correct assured as being Paul Jones, Jr., instead of Sikeston Tent and Awning Company.

9. The endorsements on both policies were made effective as of April 24, 1947, the original date of the issue of the said policies.

10. The endorsement on Commonwealth's policy provided "All other terms and conditions remain unchanged."

11. The endorsement on Protection's policy provided "Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the undermentioned Policy, other than as above stated."

12. It was the intention of all parties, the plaintiff and both defendants, to insure the building owned by the plaintiff and located on the southeast side of Highway No. 61 on a part of U. S. Private Survey No. 1032, Township 24, Range 14, New Madrid County, Missouri, about one mile south of Sikeston, Missouri.

13. There is no U. S. Private Survey No. 1062 in New Madrid County, Missouri, and the description in each policy locating the insured building on U. S. Private Survey No. 1062 instead of U. S. Private Survey No. 1032 was a mutual mistake of unknown origin which was immaterial to the description and did not confuse or mislead Commonwealth or Protection as to the true identity of the property insured.

14. The insured building was totally destroyed by fire of unknown origin in the early morning of February 1, 1948.

15. Plaintiff was the sole and unconditional owner of the insured building and of the ground on which the building stood, both when the policies were issued and when the building was destroyed by fire, and he paid the premiums on the policies.

16. At the time the policies were issued, the insured building was occupied by Harold D. Castleman, trading as Sikeston Tent and Awning Company, and was used for the manufacture and mending of cotton tents, awnings and cotton-picking bags.

17. Castleman moved out at the end of April, 1947, and the building was leased by plaintiff to Presson and McClanahan who operated it under the name of the Cotton Club serving meals, soft drinks, three point two beer and set-ups for patrons who brought their own liquor; no gambling was permitted and no liquor sold; there was no orchestra but music for dancing was supplied by a nickelodeon. The place has been described as a restaurant and dining hall, a club, and a night club but it was the same type of occupancy as that which had preceded the occupancy by Sikeston Tent and Awning Company when the building had been insured by both companies at a lower rate than that charg-

ed for occupancy by Sikeston Tent and Awning Company.

18. At the time the policies were issued and for a considerable period prior thereto, Charles T. Easterby who countersigned or authorized his signature on both policies and their endorsements as agent, was President of Commonwealth, policy writing agent for Protection, and also President of Arthur F. Houts & Co., Inc., a New York corporation, and doing business individually in Philadelphia as Charles T. Easterby and Company; after May 15, 1947, he also did business individually in Philadelphia as Arthur F. Houts & Co.

19. On and after May 26, 1947, Commonwealth and Protection had notice of the change of occupancy and use of the insured building.

20. O. L. Miller acted for Charles T. Easterby in inspecting properties, recommending rates and collecting premiums on insurance risks in Missouri, including the plaintiff's building at the time the policies in suit were issued and for some time prior thereto.

21. Plaintiff mortgaged the insured property together with three others to secure a note for $13,920 dated October 7, 1947.

22. Plaintiff gave both Commonwealth and Protection prompt notice of the total loss of the insured building, made proper demand for payment and filed formal proofs of loss on June 21, 1948.

23. The value of the insured building immediately before it was destroyed by fire was $18,000 and the loss was total.

24. Plaintiff carried primary insurance on the insured building with Commonwealth in the sum of $12,000, and pro rata contributing insurance on the same building with Protection in the sum of $5,000 for such portion of the loss as might exceed $5,000.

25. Plaintiff did not conceal or misrepresent any material fact concerning this insurance before or after the loss occurred.

26. Commonwealth's policy No. A 53624 and Protection's policy No. F. 12192 were fully paid and in full force and effect at the time plaintiff suffered a total loss of the insured building.

27. Miller first inspected this identical building (known as the Cotton Club) in 1945, at the request of John G. Powell, the local insurance representative of plaintiff, as the result of which Commonwealth issued its policy No. A 49841 for $12,000 to Letitia Jones, stepmother of plaintiff.

28. Letitia Jones later transferred the property to plaintiff.

29. When plaintiff applied to Powell for insurance on the building in question, Powell, having no company willing to accept this type of risk, in turn applied to Miller.

30. In June, 1947, Commonwealth issued a separate policy to Presson, the tenant of the building in question, in which the nature of the business carried on by the tenants was stated.

31. O. L. Miller was authorized by Arthur F. Houts & Co., Inc., the New York corporation of which Easterby was President and the principal owner, and by Charles T. Easterby and Company, which was a trade name under which Easterby conducted his insurance business, to obtain the information necessary to write insurance on the plaintiff's building and to fix a tentative rate.

32. Both Commonwealth and Protection did business in Missouri.

33. Approximately fifty policies were issued by Commonwealth on Missouri risks through Miller's connection with Easterby.

34. Missouri Inspection Bureau, otherwise referred to as Fire Insurance Rating Bureau, or Actuarial Bureau, (hereafter referred to as "Bureau") had been in existence since 1915 and serves approximately two hundred fifty fire insurance companies.

35. As provided by the Missouri Statute, Mo.R.S.A. § 5971 et seq., under which it operates, the Bureau maintains a public rating record, the rates contained therein having been arrived at by the application of schedules, rules, and forms, and are filed with and approved by the Superintendent of Insurance of the State of Missouri.

36. About September, 1946, the Bureau was requested to quote a rate on a property located in New Madrid County, Missouri, adjoining the City of Sikeston, and commonly known as the Cotton Club, the description of the property accompanying the request being, "East side of U. S. Highway 61, part of Survey 1062, Township 24, Range 14, New Madrid County, Sikeston, Missouri."

37. In compliance with this request, the Bureau did inspect the property and did publish a building rate thereon of $1.75, naming the occupant as Sikeston Tent and Awning Manufacturing Company, and indicating that the building was of mixed construction, hollow concrete block and frame in the walls.

38. The Bureau had made a previous inspection of the same property in 1938, and again in 1945, and in May of 1945 published thereon a rate of $1.60, applying to a hollow concrete block building, then occupied as a restaurant-dance hall and liquor stocks and known as Cotton Club. The rate quoted in 1938 was also $1.60.

39. The buildings at the time of the 1938 and 1945 inspections were the same, to wit, a building of hollow concrete block wall, occupied as restaurant-dance hall and liquor stocks and known as Cotton Club, also a frame building occupied as a retail liquor store.

40. Between the inspections of 1945 and 1946, the hollow concrete block and the frame buildings had been joined to constitute one building.

41. The rates as published on this property when used as a restaurant-dance hall and liquor store were at all times lower than the rates quoted when the premises were occupied by Sikeston Tent and Awning Manufacturing Company.

42. The change of occupancy and use of plaintiff's building after May, 1947, did not increase the hazard of fire over the occupancy and use of the building by Sikeston Tent and Awning Company.

43. Under date of May 21, 1947, Powell wrote to Miller requesting an endorsement changing the name of the assured in both policies here in suit from Sikeston Tent and Awning Company to Paul Jones, Jr. This letter, as originally written, carried a postscript reading, "The Sikeston Tent and Awning Company have just this week moved out. The building is again occupied as a restaurant and dining room."

44. Miller forwarded Powell's letter of May 21, 1947, to Arthur F. Houts & Co.

45. Endorsements on both policies in suit were issued dated May 26, 1947, and both signed by Charles T. Easterby as Agent, changing the name of the assured to Paul Jones, Jr., as requested, and were forwarded by Arthur F. Houts & Co. to Miller, who in turn forwarded them to Powell.

## Conclusions of Law.

1. The requirements of diversity of citizenship and jurisdictional amount are satisfied and this Court has jurisdiction of both actions.

2. Since the insured building was imperfectly described in each policy, extrinsic evidence was admissible to show the intent of the parties and to resolve the latent ambiguity in the description. Koplin v. Franklin Fire Insurance Company, 158 Pa.Super. 301, 44 A.2d 877; University City, Mo., v. Home Fire & Marine Ins. Co., 8 Cir., 114 F.2d 288.

3. The knowledge of Miller with respect to a fact material to the risk was the knowledge of Easterby, by whom he was appointed, and the knowledge so imputed to Easterby must also be imputed to his principals, the defendant companies. Restatement of the Law of Agency, § 283b; Isaac et al. v. Donegal & Conoy Mut. Fire Ins. Co., 308 Pa. 439, 162 A. 300; Headley's Express & Storage Company, Inc., v. Pennsylvania Indemnity Corporation, 319 Pa. 240, 178 A. 816; Harris v. Meyers, 160 Pa.Super. 607, 52 A.2d 375.

4. The burden of proving that the change of occupancy and use after the policies were issued increased the hazard of fire is upon the insurer asserting that defense. Harbridge et ux. v. Mutual Fire Insurance Company of Chester County, 151 Pa.Super. 278, 30 A.2d 360. Defendant failed to sustain the burden of proving

that the change of occupancy and use increased the hazard of fire.

■ 5. An insurer who is informed of a change of occupancy and use after the policy is issued and who thereafter issues an endorsement correcting the name of the insured but making no reference to the change of use and occupancy, accepts the premium for the policy and so conducts itself as to lead the insured to believe the policy is in full force and effect, is estopped to deny liability upon the ground that the change of use created an increase of hazard and thereby created a forfeiture of the policy. Hoffman v. Neshannock Mutual Fire Insurance Co., 156 Pa.Super. 13, 39 A.2d 145.

■■ 6. The mortgaging of the premises by insured without endorsement on the policy is not such change in insured's right, title and interest or in his sole and unconditional ownership as to void the policy in the absence of a specific prohibition against mortgages. This is the rule followed by the Federal Courts, the Courts of Pennsylvania where the contracts of insurance were countersigned, and in Missouri where the business was solicited, the premises located, and the insured domiciled. Royal Ins. Co. v. Bailey, 6 Cir., 35 F.2d 916; corporation for Relief of Poor Presbyterian Ministers v. Wallace, 3 Rawle, Pa., 109; Bulger v. Wilderman and Pleet, 101 Pa.Super. 168; Harper v. Consolidated Rubber Co., 284 Pa. 444, 131 A. 356; Bushnell v. Farmers' Mut. Ins. Co., 110 Mo.App. 223, 85 S.W. 103. Furthermore, a mortgage is not a violation of the sole and unconditional ownership clause of the insurance contract. Fox v. Connecticut Fire Ins. Co. of Hartford, Mo. App., 268 S.W. 393, 395; Terminal Ice & Power Co. v. American Fire Ins. Co., 196 Mo.App. 241, 194 S.W. 722, 724.[1]

■ 7. Since the plaintiff suffered a total loss on the building insured, and his loss was the same as the value of the property immediately before the fire occurred and exceeded the total insurance carried, the co-insurance clause will not reduce his recovery and plaintiff may recover up to the full amount of his policies. The formula relating to adjustment of losses and appearing in Goldin, The Law of Insurance in Pennsylvania, Vol. I, Page 252, Illustrations 3 and 6, as applied to the instant case would be

$$\frac{17000 \ \text{(the insurance)}}{18000 \ \text{(100\% of valuation)}} \ \text{equals} \ \frac{17}{18}, \ \text{or 17000, of the loss falls}$$

on the insurers, and

$$\frac{1000 \ \text{(the deficit)}}{18000 \ \text{(100\% of valuation)}} \ \text{equals} \ \frac{1}{18}, \ \text{or 1000, falls on the insured.}$$

■ 8. Since each insurer denied any liability under its policy before the expiration of sixty days after proofs of loss were filed, neither company is entitled to the benefit of the provisions of the policy relating to time of payment, and interest runs from the date of the loss. John Conlon, Coal Co. v. Westchester Fire Ins. Co. of New York, D.C.M.D.Pa., 16 F.Supp. 93; Western & A. Pipe Lines v. Home Ins. Co., 145 Pa. 346, 22 A. 665.

9. Plaintiff is entitled to recover from Commonwealth the sum of $12,000 with interest from February 1, 1948, to date.

10. Plaintiff is entitled to recover from Protection the sum of $5,000 with interest from February 1, 1948, to date.

11. Costs shall be paid by the defendants.

Orders will be entered in each case in accordance with the above Findings of Fact and Conclusions of Law.

1. In Union Assurance Co. v. Nalls, 101 Va. 613, 44 S.E. 896, 897, 99 Am.St.Rep. 623, the court said: "the authorities are practically unanimous to the effect that an incumbrance is not an estate in or title to property, within the meaning of the provision that, if the interest of the assured be other than an unconditional or sole ownership, the policy shall be void."